STATE of Missouri ex rel. Virgil D. MISER, Appellant,

v.

Curtis F. HAY and the Fidelity and Deposit Company, a Corporation, Respondents.

No. 47362.

Supreme Court of Missouri,

Division No. 2.

Nov. 9, 1959.

Donald F. Price, Lee D. Seelig, Kansas City, Ewing & Beavers, Maryville, for appellant.

Hale, Coleberd, Kincaid & Waters, Robert E. Coleberd, Arthur Roy Kincaid, Sevier & Turnage, Robert F. Sevier, William E. Turnage, Liberty, for respondent Curtis F. Hay. Stephens & Thackery, Grant City, of counsel.

SAMUEL A. DEW, Special Commissioner.

The plaintiff seeks to recover $10,000 in this action for personal injuries sustained while in the custody of defendant Hay as sheriff of Clay County, Missouri. The defendant Fidelity and Deposit Company is joined as surety on defendant Hay's official bond. The verdict of the jury was in defendants' favor. Judgment was entered accordingly, from which plaintiff has appealed.

In Count I of his petition plaintiff alleges breach of duty by defendant Hay as sheriff on April 10, 1957, acting through his deputies, in that Hay arrested plaintiff, who was guilty of no crime, and without an appearance before a magistrate, confined the plaintiff for a period exceeding two and a half hours in the county jail of Clay County, Missouri, while plaintiff was in a condition of "ill health and helpless," when defendant Hay and his deputies knew, or in the exercise of ordinary care could have known, that if plaintiff was placed in a cell with common criminals and felons he would be assaulted and injured; that defendant Hay, nevertheless, placed the plaintiff in the "bull pen" of said jail with five common criminals and felons who, by reason of defendant Hay's failure to take reasonable measures for the plaintiff's protection, assaulted, bruised, kicked and wounded plaintiff, causing, among other injuries, the loss of one of his eyes. Count II, for false arrest, was dismissed by the plaintiff.

The answer denied the allegations of breach of duty by defendant Hay; admitted the arrest and confinement in the Clay County jail and pleaded contributory negligence on the part of the plaintiff in that he was guilty of disturbing the peace in the presence of the officers, was intoxicated, and if injured it was the result of plaintiff's own conduct toward other inmates in the jail; that Hay had no other place to confine the plaintiff than the county jail, where the plaintiff promptly abused the other inmates and incited them to assault him, whereupon defendant Hay, in the exercise of ordinary care, removed the plaintiff. The answer avers that defendant Hay had no way of knowing that the plaintiff would incite the other inmates to assault him, and that defendant Hay subsequently arrested the inmate who committed the assault, who was later given a sentence of six months in the county jail for the assault. The answer repeated that plaintiff's injuries were due to his own willful acts in cursing and abusing other prisoners in the jail.

Upon the plaintiff's application for change of venue this cause was sent to the Circuit Court of Worth County, Missouri, where the trial was had.

There is very little dispute regarding the essential facts. Plaintiff, aged 30, a railroad clerk, stayed home on April 10, 1957, his day off. He had "some words" with his wife, and toward evening took his rifle and went to the river to shoot cans. Before leaving home he had consumed six cans of beer and drank six more after leaving the home. He later stopped at Elardo's store, where he bought some "schnapps," of which he took one drink. He said he remembered nothing thereafter until he found himself in the police car on the way to the hospital.

Other witnesses testified that at Elardo's he was belligerent, sought to pick fights with the other customers, was abusive and profane and was carrying his rifle bolt in his pocket. Plaintiff had been convicted a year previously for driving while intoxicated. Elardo had someone call defendant Hay and asked that he come to his store because plaintiff was "raising a row" in the store and might hurt someone or get hurt.

When defendant Hay's two deputies arrived at Elardo's store, they approached the plaintiff, asked his name and asked if they could call anyone to come and get him. He replied that his wife was waiting for him in his car. There was no one in his car. They asked him about his rifle bolt in his pocket and told him that such a weapon might kill anyone if hit with it, to which he replied: "I aim to kill." The deputies walked him to their car and took him to the county jail. On the way his hands were not handcuffed. He kept trying to climb over into the front seat where the driver was sitting.

Upon arrival at the jail he was booked as being very drunk and belligerent. He was taken into one of the "bull pens" in the jail and a bed was brought in for his use. Five other inmates were in the cell. They were serving different sentences for their respective offenses, consisting of the theft of a car, issuing bad checks, and common assault.

Many other drunken persons had been placed in the "bull pen" with other prisoners during defendant Hay's experience but none had ever caused any trouble. There was no other cell available at the time. Two cells were being kept open for women or juveniles. A woman was occupying one of these cells. Much evidence was introduced relative to the location and character of the steel doors intervening between the "bull pen" and the office, and the ability of the sheriff in his office to hear any confusion in the "bull pen." There was a peephole through which visitors and officials could see the inmates in the "bull pen."

Upon entering the "bull pen" plaintiff first stood looking at the other inmates, who were playing cards. He raised his foot as if to kick one of them. He was told to go sit on his mattress. This he did, but soon got up and got in the bed of another inmate. Then he insisted that he be allowed to join in the card game. He took the cards that were discarded in the game and threw them all over the floor, stopping the game. He then sat down on the bed of one Collier, pulled out Collier's cigarettes and started to smoke. He was given some "Bull Durham" tobacco, which he dumped upon the floor. He spit on the floor. He gouged his elbow into the side of another inmate. He then announced that he was going to sleep in Collier's bed and that Collier could sleep on the floor. Collier by this time was pacing the floor. Plaintiff was approaching him and taking off his coat. Plaintiff took a swing at inmate Hudlemeyer, who struck the plaintiff and knocked him down, whereupon Collier kicked him several times in the face and head. All this happened about the time the lights went out at 9:25 p. m. Several of the inmates called loudly to the defendant Hay's office and the deputies turned on the lights, came at once and removed the plaintiff to a single, empty cell upstairs and called a doctor. Plaintiff was then taken to the hospital, was treated for his injuries and one eye removed.

During the testimony of the defendant Hay, he referred to two cells which he said he "was supposed" to keep open for women and juveniles and when asked if that was according to a court order, the court, upon further objection, remarked: "That is the law, doesn't make and difference whether it is the court's instruction."

In a memorandum of the court in connection with the overruling of plaintiff's motion for new trial the court stated that no objection was made to the oral statement of the court at the trial to the effect that it was the law that two cells be kept open for women and juveniles, nor was any objection thereto made at any other time in the trial. The court further stated in the memorandum that defendants' motion for a directed verdict at the close of the testimony should have been sustained.

Plaintiff's first point is that the court erred in giving Instruction No. 7, requested by the defendants, because it required of the plaintiff to use the same degree of care

for his own safety as a sober person. That instruction was as follows:

"The court instructs the jury that the care required of a person who has become intoxicated voluntarily is the same as that required of one who is sober. If he fails to exercise that degree of care for his own safety which an ordinarily prudent sober person would exercise under the same or similar circumstances, and such failure contributes as a proximate cause to the injury of which he complains, he is guilty of contributory negligence.

"Therefore, you are instructed in this case that if you find and believe from the evidence adduced here that Virgil D. Miser was confined in Clay County jail and was intoxicated and belligerent, if so, and if you further find that he there began arguing and striking at the prisoners who were confined in the same cell as he, as mentioned in evidence, if so, and that he started a fight with one Raymond Hudlemeyer, if so, which fight resulted in plaintiff being knocked down by said Hudlemeyer and kicked by James Milton Collier, if so, as a consequence of which he lost the sight of his left eye, if so, and if you find and believe that in so acting as aforesaid, if you find he did so act, plaintiff failed to exercise that degree of care for his own safety which an ordinarily prudent sober person would exercise under the same or similar circumstances, if so, and if you find such failure directly caused or contributed to cause the injury of which he complains then your verdict will be against plaintiff and for defendants."

In the plaintiff's main Instruction No. 1, he had submitted his case on the failure of the defendant Hay and his deputies to exercise ordinary care in the discharge of their duties toward the plaintiff when they knew or by the exercise of ordinary care could have known, that plaintiff was drunk, belligerent and in a helpless condition, and that if confined in a cell with common criminals and felons he would be assaulted and injured. By his requested Instruction

No. 2, the word "negligence" was defined as the "failure to exercise reasonable care or that degree of care which a prudent person would exercise under the same or similar circumstances."

It will be noted that in his pleading, in his evidence and by his requested instructions, plaintiff presents a case of alleged negligence, arising out of the alleged failure of the defendant Hay to exercise ordinary care for the safety of the plaintiff while in his custody and while "drunk, belligerent and helpless." Defendants' Instruction No. 7, therefore, properly had for its purpose the submission to the jury of the plaintiff's contributory negligence while in his admitted state of drunkenness and belligerency. It must be kept in mind that the point raised is not that the defendants' required degree of care under the circumstances was improperly stated in the instruction. Both parties tend to depart frequently in their briefs to that subject. We must confine our consideration of the plaintiff's Point I to the sole contention that the court erred in fixing the degree of care required of the plaintiff for his own safety while in a drunken condition, as that required of a sober person insofar as it may have contributed to the injury.

It was said in 38 Am.Jur., Negligence, p. 883, § 203: "Voluntary intoxication does not relieve one from contributory negligence, or serve to relax the requirement which is imposed upon a person to exercise due care for his own safety. Every person is bound to a duty of exercising his intelligence to discover and avoid dangers that may threaten him, and intoxication voluntarily produced can constitute no excuse for a failure fully to perform this obligation. One who has voluntarily disabled himself by reason of intoxication is held to the same degree of care and prudence in the interest of his own safety that is required of a sober person. A person threatened with a peril caused by the negligence of another is bound to exercise his intelligence and activity in full measure to avoid injury therefrom, and if it appears that

from voluntary drunkenness he has deprived himself of the capacity so to do and as a result has suffered an injury, he will be denied legal redress therefor on the ground of contributory negligence. Thus, where one, by reason of his own voluntary intoxication, exposes himself to danger, and receives injuries which he could, and by the exercise of ordinary prudence would, have avoided if sober he is guilty of contributory negligence and cannot recover for such injuries * * *."

The same authority at page 884 states further that the intoxication itself is not negligence per se and will not prevent recovery except as it affects the care which the plaintiff takes for his own safety. See, also, 72 C.J.S. Prisons § 13, pp. 865, 866; Law of Torts, Prosser, p. 127, Chap. 5, Sec. 31.

■ On the same subject, it is said in 65 C.J.S. Negligence § 295, p. 1252: "Where there is evidence of plaintiff's intoxication, defendant is entitled to an instruction that 'ordinary care' means the care which ordinarily prudent persons, if sober, exercise under similar circumstances, and such instruction is proper, even though not requested; but a failure so to instruct is not erroneous if no request is made. It is error under such evidence to state the rule of ordinary care as that degree of care which may reasonably be expected of a person in the situation of plaintiff at the time of the accident. The court should also instruct the jury as to the causal relation between the intoxication of plaintiff and the accident, and that it must have contributed to his injury if it is to bar his recovery."

■ The policy of the law of Missouri on the issue of the degree of care required by a drunk person for his own safety as it applies to contributory negligence is positively stated by this court in Carpenter v. Kurn, 345 Mo. 877, 136 S.W.2d 997, 1005, wherein it is stated: "Deceased was negligent in sitting down on the track when a train was about due to come along, and going to sleep or losing himself in medita-

tion, whether drunk or sober. In 45 C.J. p. 997, Sec. 551, we read: 'The care required of a person who has become intoxicated voluntarily is the same as that required of one who is sober. If he fails to exercise that degree of care for his own safety which an ordinarily prudent sober person would exercise under the same or similar circumstances, and such failure contributes as a proximate cause to the injury of which he complains, he is guilty of contributory negligence.' Many cases are cited in footnotes, which support the text."

■■ It is our opinion and we so rule that the court did not err in the respect claimed in giving the defendants' Instruction No. 7. For the purposes of the defense of contributory negligence, voluntary intoxication which contributes as a proximate cause to a person's injury is no excuse for his failure to use ordinary care for his own safety when he seeks, on grounds of negligence, to recover from another person for such injuries. In the case at bar this issue was submitted to and determined by the jury in its verdict.

Plaintiff's second point is that: "As a matter of law, contributory negligence is no defense to assault and battery and the submission of the contributory negligence instruction is reversible error." It needs no review of the proceeding to determine that this cause of action is not for assault and battery. There is no pleading, no evidence, no instructions or arguments in the record that would justify the classification of this cause as a suit against the defendant Hay for assault and battery. It is not shown, nor was any attempt made to show, that either the defendant Hay, his deputies, or any other person acting for or in his behalf, struck, kicked, bruised or otherwise assaulted the plaintiff. The point presents nothing for our review.

Plaintiff's last point is that the voluntary and oral statement by the court in the trial regarding the law respecting the reservation of a cell or cells in county jails for women and juveniles was prejudicial error.

The record on the subject, during the testimony of defendant Hay, is as follows:

"Q. And may I ask whether or not on that particular evening you had one cell that was either an individual cell or a single cell that was open? A. I had one, top of the steps.

"Q. And do you have any instructions to keep one open? A. That is for women and juveniles. It is separate from all the rest of the cells, and we have another place for juveniles, and we are supposed to keep those two open. I had a lady in one and I was keeping the other one open.

"Q. And that is under instruction of our circuit court? A. Yes.

"Mr. Seelig: Oh, Your Honor, we object—

"Mr. Price: (Interposing) We object—

"The Court: That is the law, doesn't make any difference whether it is the court's instruction.

"Q. (Mr. Sevier) Well, Sheriff Hay, then you had no other place to put Mr. Miser than put him in some other cell— A. (Interposing) I had no other place at all.

"Q. All right, and were all the other cells filled with either one or two prisoners in it? A. Yes, sir."

 Plaintiff's counsel did not object to the answer of defendant Hay that "I am supposed to keep them open." Nor did he object when the court made the statement complained of nor at any other time during the trial, and for the first time referred to it in the motion for new trial. Furthermore, present Section 211.151 (Sec. 211.150, Session Laws of Mo., 1957, p. 649), V.A.M.S. authorizes a court to place a juvenile in a jail or other facilities for adults, provided that such juvenile be placed "in a room or ward entirely separate from adults confined therein." If the statement of the court as made was incorrect or improper, we believe the point made

was waived by the failure of the plaintiff to make timely objection thereto.

The judgment should be affirmed. The Special Commissioner so recommends.

PER CURIAM.

The foregoing opinion by DEW, Sp. C., is adopted as the opinion of the court.

All concur.