ALICE STEWART, Respondent, v. GERALD FARLEY, Appellant, No. 43919—269 S. W. (2d) 896.

Division Two, July 12, 1954.

*Byron G. Carpenter, J. C. Jaeckel* and *Moser, Marsalek, Carpenter, Cleary & Carter* for appellant.

*Hullverson & Richardson* for respondent.

 BARRETT, C.—In this action for damages for personal injuries Alice Stewart has recovered a judgment of $8500 against her host, Gerald Farley. The plaintiff was a guest in the defendant's automobile when it left the paved portion of the highway and overturned near Dupo, Illinois. The theory of her action, as set forth in the instructions, was that Farley was guilty of willful and wanton misconduct in the operation of his automobile in that while he was driving at a speed of sixty to sixty-five miles an hour, after he had been drinking beer and whisky and "was under the influence of intoxicating liquors," and despite the protests of his guests, forcefully turned the steering wheel from side to side causing the automobile to weave back and forth across the pavement and overturn. The defense to the action was that Alice participated with Gerald in the consumption of intoxicating liquor and voluntarily rode with him after knowledge of his dangerous manner of driving, after once getting out of the automobile, and was therefore likewise guilty of willful and wanton misconduct endangering her own safety and for that reason not entitled to recover in this action. The jury having resolved these issues in favor of the plaintiff, it is now urged that her willful, wanton misconduct was established as a matter of law and that the trial court erred in not directing a verdict for the defendant at the close of the evidence.

 As we understand the record, the defendant did not appear at the trial of his case, there were no witnesses on his behalf, and it is tacitly conceded that the jury's finding that he was guilty of the hypothesized wanton and willful negligence is supported by substantial evidence. The defendant's willful misconduct having been established, the plaintiff's contributory negligence is no defense to the action. Restatement, Torts, Sec. 481(a); annotation 38 A.L.R. 1424; 119 A.L.R. 654. In these circumstances, in order to defeat the plaintiff's cause of action as a matter of law, it must appear that the plain-

tiff "knowing of the defendant's reckless misconduct and the danger involved to him therein, the plaintiff recklessly exposes himself thereto," or, to put it another way, was likewise guilty of wanton and willful misconduct. Restatement, Torts, Secs. 482 (2), 503; annotation 41 A.L.R. 1379. In determining whether the plaintiff has thus recklessly exposed herself to the danger, the same factors and tests applicable to the defendant's conduct are to be applied to the plaintiff's conduct. Restatement, Torts, Sec. 502. And the test, applicable to the conduct of both parties, is that "The actor's conduct is in reckless disregard of the safety of another if he intentionally does an act or fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize that the actor's conduct not only creates an unreasonable risk of bodily harm to the other but also involves a high degree of probability that substantial harm will result to him." Restatement, Torts, Sec. 500. So the question here is, in view of the general rules and all the facts and circumstances, whether reasonable minds could differ as to the plaintiff's conduct, if so it may not be declared as a matter of law.

██ Alice was a waitress in a tavern in St. Louis, working the shift from four o'clock in the afternoon until midnight. In the course of her employment she became acquainted with Thomas Polk, a tavern patron. She had previously seen Farley but was not acquainted with him. On the afternoon of February 20th, 1952, Polk and his friend, Farley, asked Alice if she would go over "to the East side" after work and play shuffleboard, a game at which Alice had some claim to being a champion. She accepted the invitation and after work she and two couples left her place of employment and met the boys at Steve's Tavern. There she had her first drink, a split of beer, and about one o'clock the two couples in one car and Farley, Polk, Chandler and Alice in Farley's car proceeded to the M & M Tavern near Dupo. Alice says that Farley had one drink in her place after he got off from work, that he was sober when they left Steve's Tavern in St. Louis, that there was no drinking en route and, on the trip over, he drove "all right." Polk said, "He drove fairly good on the way over."

In the M & M Tavern the two couples danced and Alice and her three companions ██ played shuffleboard, Alice and her partner winning the three games played, the stakes being beer. Alice admits that she drank six or seven splits of beer during the course of the entire trip, but she denies that she drank any whisky. Except for the drink Farley had in her place of employment she did not see him drink anything other than beer until they started home. They left the M & M Tavern and went to a nearby place to eat and there had another beer. Farley did not eat and stayed out in the car most of the time.

As they left the last tavern for the trip home Alice did not observe that Farley was intoxicated, but before they arrived in Dupo he began turning the steering wheel from side to side causing the car to zigzag and weave back and forth across the four-lane pavement. The three passengers began to complain of his driving and as they entered Dupo Polk demanded that he stop the car. He did stop the car and all three of them got out. Farley asked them to get in again, he said, "Come on, get back in. I'll behave myself, I'll drive right." But Polk refused to again get in the car, explaining, "When I once get out of a man's car I stay out." Polk said that he was going to get a cab and he invited Alice to go with him. But it was then after three o'clock in the morning, and "I didn't see no light where you could get a cab," and upon Farley's promising to behave and drive properly she and Chandler got in the front seat of his automobile. At that time Polk, in a deposition, in answer to a question as to whether Farley was drunk, said, "Well, I couldn't say. Some people get drunk and you can't tell at the time. This boy, he never said a word. He don't never talk to anybody much, you know. Most guys get big and loud. I wouldn't say he was drunk, and I wouldn't say he was sober." In testifying upon the trial he sought to leave the impression that he left the car because "He just didn't drive to suit me; it excited me."

After they resumed the trip Alice said that Farley drove all right for a while, "Starting out he was driving all right." But soon, "He reached in the glove compartment and took a drink out of a bottle, and asked us if we wanted a drink. We said 'No,' and he started weaving back and forth on the highway. Chandler asked him to let him drive. He said, 'No.'" Farley was again driving sixty to sixty-five miles an hour and Alice and Chandler again begged him to stop and let them out, and almost immediately the car, after going around a curve, left the pavement and overturned. It was the opinion of an Illinois State Highway police officer that Farley was intoxicated. His investigation showed that "the car rounded a sort of an S curve and ran off the highway after he made the curve," and after the car had traveled from one side of the road to the other, off the pavement three times, for a distance of five to six hundred feet before it overturned. In his partially read deposition Farley admitted drinking beer; it does not appear that he was examined concerning his own sobriety. This is his version of the car's leaving the road, "Well, as I was going along (forty-five to fifty miles an hour) I come to this curve and I just didn't make it, that is all. * * * Well, I seen it but I just couldn't make it. * * *I almost made it, and then I swerved."

It must be borne in mind that we are not concerned here with Farley's conceded wanton misconduct but with the interpretation, force and effect of Alice's conduct in the circumstances. "In order that

the plaintiff's conduct may bar him from recovery, it is necessary that he not only know of the defendant's reckless conduct but also realize the gravity of the risk involved therein so that he is not only unreasonable but reckless in exposing himself to it.'' Restatement, Torts, Comment, p. 1262. ''Wantonness'' or ''recklessness'' within the rule means that the actor, here the plaintiff, ''has intentionally done an act which was of an unreasonable character, in disregard of a risk known to him or so obvious that he must be taken to have been aware of it, which was so great as to make it highly probable that harm would follow.'' Prosser, Torts, p. 261. These terms, ''wilful,'' ''wanton,'' and ''reckless'' connote ''an aggravated form of negligence,'' they must mean more than inexperience, confusion, inadvertence, or mere thoughtlessness. Such conduct differs in degree as well as in kind from mere negligence, ''and in the social condemnation attached to it.'' Despite the difficulties courts have encountered in rationalizing the rule denying recovery to a plaintiff who has recklessly exposed himself to known misconduct, it is ''in reality a rule of comparative fault which is being applied, and the court is refusing to set up the lesser fault against the greater. * * * And if the plaintiff's own conduct is 'wilful' or 'wanton,' it will be balanced against similar conduct on the part of the defendant, and recognized as a defense.'' Prosser, Torts, pp. 262, 402. Without analyzing and demonstrating, in the detailed circumstances Alice's conduct may have been ever so lacking in sound judgment, thoughtless, indeed negligent, but it may not be indubitably said that her conduct was so manifestly foolhardy as to positively denote the aggravated negligence contemplated by the rule. She participated in some degree in bringing about Farley's mental condition, but from her point of view their mutual conduct was not so flagrantly and manifestly reckless as was the conduct of both parties in Hirsch v. D'Autremont, 133 Cal. App. 106, 23 P. (2) 1066; Kavanaugh v. Myers' Adm'x., (Ky.) 246 S. W. (2) 451; Sparks v. Chitwood Motor Co., 192 Ark. 743, 94 S. W. (2) 359; Schubring v. Weggen, 234 Wis. 517, 291 N. W. 788. In short, a jury could have found from all the facts and circumstances that Alice was guilty of such mutual, wanton, reckless, misconduct that she was not entitled to recover from her host, but other, more favorable, inferences are reasonably permissible and it may not be declared as a matter of law. Kitch v. Adkins, 346 Ill. App. 342, 105 N. E. (2) 527; Countryman v. Sullivan, 344 Ill. App. 371, 100 N. E. (2) 799; Davis v. Hollowell, 326 Mich. 673, 40 N. W. (2) 641.

 As it was with whether Alice was guilty of wanton and willful misconduct so it was with the claim that in rejecting Polk's offer of safe transportation back to St. Louis, a choice deliberately made, she thereby assented to and assumed all risks attending Farley's operation of his automobile. It is said by counsel that there are no Illinois cases on the subject of whether or not assumption of risk is a

defense to a charge of defendant's wanton and willful misconduct and it is not necessary here to hazard a prophecy on the subject, it may be assumed that it is, or that the rules set forth in the Restatement will be applied. In either event it does not clearly appear that there was such manifest indication of physical or mental incapacity on Farley's part as to forewarn of the events that followed, or that Alice could not reasonably believe that their remonstrances and Farley's promises would not be heeded. Under all the facts and circumstances reasonable minds could differ and it may not be ruled as a matter of law either that she assumed the risk or was guilty of such wanton recklessness in resuming the homeward trip with Farley that she was not entitled, as a matter of law, to maintain this action. Davis v. Hollowell, supra; Beckman v. Wilkins, 181 Minn. 245, 232 N. W. 38; McGaffigan v. Kennedy, 302 Mass. 12, 18 N. E. (2) 344; McCance v. Montroy, 75 Cal. App. 186, 170 P. (2) 109. Under all the detailed facts and circumstances of the particular occasion, the defendant's liability and the plaintiff's right to recover were appropriately questions for the jury, accordingly the judgment is affirmed. *Westhues* and *Bohling, CC.,* concur.

PER CURIAM:—The foregoing opinion by Barrett, C., is adopted as the opinion of the court. *Leedy,* Acting P.J., and *Bennick* and *Stone,* Special Judges, concur.