**MAY DEPARTMENT STORES, INC.,**
**d/b/a Venture Stores, Inc.,**
**Plaintiff-Appellant,**

v.

**SUPERVISOR OF LIQUOR CONTROL,**
**Defendant-Respondent.**

**No. 36818.**

Missouri Court of Appeals,
St. Louis District,
Division Three.

Nov. 18, 1975.

---

James W. Herron, J. L. Pierson and Richard T. Ciottone; Lewis, Rice, Tucker, Allen & Chubb, St. Louis, for plaintiff-appellant.

Scott A. Raisher, Asst. Atty. Gen., John C. Danforth, Atty. Gen., Daniel Card, III, Asst. Atty. Gen., Jefferson City, for defendant-respondent.

SIMEONE, Presiding Judge.

This is an appeal from a judgment of the circuit court of the City of St. Louis entered December 23, 1974, affirming an order of the acting supervisor of liquor control entered October 10, 1974, which suspended the liquor license issued to the appellant, May Department Stores, Inc., doing business at the Venture Stores, Inc., for a period of three days. For reasons hereinafter stated, we affirm the judgment of the circuit court and the order of the supervisor.

This cause presents unique facts and involves an unresolved question in this state. The facts are rather simple, yet the legal issues raised are complex and are not easily resolved. The issue in this proceeding is whether the supervisor of liquor control may, upon substantial and competent evidence, suspend the license of a liquor dealer, when there is some contradictory evidence that the liquor was sold to a minor for and on behalf of his adult brother, and whether such a sale is prohibited by § 311.-310, RSMo 1969. We hold that under the facts presented by this record there was substantial and competent evidence for the acting supervisor and the circuit court to conclude that a sale was made to a minor in violation of the statute and that the order of the supervisor suspending the license of the dealer for three days and the judgment of the circuit court affirming such order must be affirmed by this court.

In order to resolve the issue presented, it is necessary to make a somewhat detailed statement of the facts.

About 8:50 p. m. on May 3, 1974, Officer Charles Schaefer of the St. Louis Police Department assigned to the liquor section was in the appellant's Venture Store at 4930 Christy Avenue in the City of St. Louis. He was on duty there with Norbert Kemp, a state liquor agent of the State of Missouri. Both were in casual clothes.

Officer Schaefer noticed a young man, later identified as Dennis Bomarito, in the "liquor section of the Venture Store." "When I first noticed him, he was removing some cigars, packages of cigars from off a display rack." Schaefer walked to the area of the liquor display and joined Agent Kemp, who was standing by the cash register for the liquor and tobacco. Schaefer again observed Dennis Bomarito, whose age was later determined to be seventeen, at the check out counter. At this time, Officer Schaefer stated that Dennis "had two six packs of 12 oz. cans of Busch Bavarian beer in his possession along with several packages of cigars." He also testified that:

"When it came his turn to check out he placed his two six packs of beer on the check out counter along with the cigars. A sale was rang [sic] up by the sales clerk who was later identified as a Marsha Wilbanks, she then pushed the beer down the check out counter to a bagger, his name was Broekelmann [sic]. [Broekelman] packaged the beer, along with the cigars, Wilbanks rang up the sale and

Dennis Bomarito handed her a ten dollar bill. She put the money in the cash register and returned an unknown amount of currency to Dennis Bomarito . . . ."

Officer Schaefer was standing some ten to fifteen feet from the transaction. As Dennis approached the check out counter, Officer Schaefer stated that he had the beer in "his possession, he had it in his arms" and saw him "put it on the counter." Behind Dennis at the check out counter was Dennis' brother, Joseph Bomarito, age 22. Officer Schaefer did not see Joseph carrying beer, nor did he see Joseph put any money on the counter. He saw Dennis "push the money across the check out lane." As the two brothers left the counter, Officer Schaefer saw the brothers "slap" hands— "one put his hand like that and the other one slapped down like that and then they walked away from the check out counter."

When the two brothers walked away from the counter, they walked around several aisles of the store. Officer Schaefer and Agent Kemp kept them in sight. Dennis had "possession of the beer at all times, at this time." "They had a conversation with one or two store employees, then they walked to the exit door facing Kingshighway Blvd. Just as they were about to exit the door both . . . turned and looked in our direction when at that time Dennis gave his older brother the beer. They both exited the door and Dennis went to the left and Joseph went to the right." Officer Schaefer stopped Dennis, and Agent Kemp stopped Joseph. Sometime later that evening, the officers questioned Dennis, after advising him of his rights in the presence of his father. Officer Schaefer testified that Dennis then "told me that he did buy the beer, but the beer was intended for his older brother." It was stipulated that Dennis was under twenty-one and that the beer seized contained intoxicating liquor.

On cross-examination, Officer Schaefer was asked, "Are you absolutely certain that he [Dennis] took them both, six packs and put them on the counter?" He answered, "Yes sir, I am." Officer Schaefer did not see Joseph touch the beer in any way. He heard no conversations take place between the brothers and the check out girl, Marsha Wilbanks, and the "bag boy," Tom Broekelman. He did not see Joseph reach in his pocket and pull out any money. Officer Schaefer admitted on cross-examination that the boys at some time earlier gave an explanation for the "slapping hands" incident, which was that a third brother had "just returned home from the service and that they were going to visit the third brother at Joseph's apartment . . . ."

Agent Kemp substantiated much of Officer Schaefer's testimony. He was standing "outside of the liquor counter, about eight or ten feet from the check out counter" and observed Dennis approach the liquor counter. He observed Dennis place two six packs of beer on the counter and observed him hand some money to the cashier, Marsha Wilbanks. She rang up the sale and placed the money in the register. The beer was passed down to the "bag boy." He bagged it, and Dennis picked up the bag and "exited from the department." He saw no one else pass money to the checker. When Dennis left the counter he had the beer. When he left, Dennis was accompanied by "another youthful male" and they started around different departments. The two officers followed. Dennis had the beer. When they got near the exit, "they turned around . . . [and] Dennis handed the beer to his brother . . . ." When they went out the door, Joseph went to the right, and was then stopped by Agent Kemp. At the counter, no identification was shown. He heard no conversation at the counter.

Dennis and Joseph Bomarito testified at the hearing before the supervisor. Dennis worked in the Venture Store and had worked that day—May 3, 1974. Dennis stated that he went to the tobacco stand in the store and

"got me 4 packs of cigarellos, made by Roi Tan and then my older Brother Joe, he went to the liquor counter and got 2 six packs of Busch. We then proceeded

up to the check out lane and got in line. We waited our turn got up there and put the beer on the counter and the cashier rang up Joe's beer and it came out something like 28¢ short. So I told him I would lend him the money because I just got paid that day and I had my bills in my front pocket so I pulled out, and a ten came out . . . so I said well, I would just lend you this 28¢. . . . And as far as I know she rang it all up on my bill . . . ."

Afterwards, Dennis and Joseph went to find some light bulbs in the store; they couldn't find them in the department they went to and then "I [Dennis] handed the package of liquor to my brother cause I knew it was against the law for me to carry the liquor out of the store . . . ." Dennis also testified that Joseph gave the cashier an amount of money but was twenty-eight cents short, "so I lent him the twenty eight cents cause I had to pay for my cigarettes anyway and so I guess she just charged it all to me out of my ten for my cigarettes." Dennis further stated that Joseph "put money on the counter." But he came "short." Dennis did admit to picking up the beer.

Joseph, the older brother, was with Dennis that night. His version of the incident differed somewhat from Dennis' and the Officers'.

Joseph's version of the incident was that he approached the counter with two six packs of beer and handed the beer to Dennis "across an obstruction," and "he [Dennis] put it on the counter . . . ." Joseph testified that he did not put any money on the counter because he had counted the money in his wallet and realized he was short and because Dennis was bringing his money out. Joseph stated he went back to the liquor department and "picked up a couple of six packs" and Dennis got in line to hold a place. When Marsha Wilbanks started to ring up, "I was 28 cents or 24 cents or something short and I turned around to ask Denny if he could loan me

some money . . . ." He explained the "slapping of hands incident" by saying that there was "some statement about my older brother Ricky," who just "got out of the army last May, June, something like that . . . ."

Joseph stated that when the brothers were in the back of the store,

"I [Joseph] told him that I had best be carrying the beer because he would get in trouble if he goes outside carrying it, if anybody comes up or something because he is under age, so I took the beer and started out the door, there was two sets of doors, I got past the first one and leading up to this, this comes to something else, I'm kinda forgetful where I park the car in those big lots. We started going out the doors and Denny went out one set and I was going out the other, to figure out where the heck I had parked the car."

There were two other witnesses at the hearing before the supervisor—Miss Marsha Wilbanks, the 19-year-old cashier, and Tom Broekelman, the 19-year-old part-time "bagger." Marsha knew Dennis from working in the store. She could not remember who was carrying the beer; the beer was already on the counter and so were the cigarettes. "I don't remember which I rang through first, the beer or the cigarettes, and then I took the money and made my, you know, it could have been I just turned and just got change." She admitted taking ten dollars from Dennis and did not pay "any attention" concerning the offer of any other money. "I just take what I was handed." She did not remember to whom she returned the change, but "passed the receipt on to Tom . . . ."

Tom Broekelman did not know who put the beer on the counter. "[T]he stuff was down there on the, you know, the counter and Marsha rang it up, my job is just to bag it up, I bagged it on up and . . . ." He knew Dennis from the store, and "recognized Joe," because he had purchased liquor before. He did see both brothers

reach in their pockets for some money and "Dennis ended up paying for it." He saw "Dennis tender the money."

As a result of this incident, the acting supervisor on July 16, 1974, cited the appellant for an alleged liquor violation—unlawful sale to minor in that "you or an employee did wrongfully and unlawfully sell or otherwise supply a quantity of intoxicating liquor . . . to Dennis Bomarito, a person under the age of twenty-one years, in violation of and contrary to Section 311.310,[1] Chapter 311, Revised Statutes of Missouri, 1969, as amended." The hearing was held on October 8, 1974, at which the above evidence was adduced.

On October 10, 1974, the supervisor issued his memorandum and order. The supervisor held that:

"Based on the testimony, demeanor and interest of witnesses called in the course of these proceedings, I find that there is competent and substantial evidence to support the following findings of fact:

1. Dennis Bomarito testified that his ten dollar bill was used to pay for two six packs of Busch Bavarian beer and a tobacco purchase.

2. Cashier Marsha Wilbanks testified she took the ten dollar bill from Dennis Bomarito for the purchase and returned his change to him and that she knew he was seventeen years old because he was a former employee of the corporation at this location.

3. Joseph [sic] Broekelman testified that he 'bagged' the two six packs of Busch Bavarian beer, but did not know who payed [sic] for the purchase.

4. Detective Charles Schaefer . . . testified that he saw Dennis Bomarito hand the cashier a ten dollar bill after placing two six packs of beer . . . on the check out counter.

5. State Liquor Control agent Norbert Kemp testified that he observed the transaction from a distance of approximately eight to ten feet, but did not see the denomination of the currency.

. . .

The only conclusion of law which can be made with regard to the foregoing findings of fact is that the activity involved herein does constitute a violation of Section 311.310, Revised Statutes of Missouri, 1969, which prohibits the sale or supply of intoxicating liquor to any person under the age of twenty-one years. . . ."[2]

The supervisor then ordered the license authorizing the sale of original package liquor be suspended for a period of three days commencing on November 4, 1974. The order was later stayed "pending review of this cause by the Missouri Court of Appeals . . . and until further order of the Supervisor."

---

1. § 311.310: "Any licensee under this chapter, or his employee, who shall sell, vend, give away or otherwise supply any intoxicating liquor in any quantity whatsoever to any person under the age of twenty-one years, or to any person intoxicated or appearing to be in a state of intoxication, or to a habitual drunkard, and any person whomsoever except his or her parent or guardian who shall procure for, sell, give away or otherwise supply intoxicating liquor to any person under the age of twenty-one years, or to any intoxicated person or person appearing to be in a state of intoxication, or to a habitual drunkard, shall be deemed guilty of a misdemeanor; provided, however, that this section shall not apply to the supplying of intoxicating liquor to a person under the age of twenty-one years for medical purposes only, or to the administering of said intoxicating liquor to any person by a duly licensed physician."

2. The supervisor noted that the licensee has a good record with the Department of Liquor Control since it has been in business since April, 1972, and there have been no violations. "It should be noted that the licensee and counsel expressed concern at a pre-hearing conference . . . that this violation might have affect [sic] on their applications in the future for licenses in other states. Should the Division receive any inquiries from other states, I want to assure you that a full explanation of this violation will be forwarded.

"This violation will not have any significant affect [sic] upon the corporation renewing its existing licenses or making new applications in the state of Missouri."

In due time, appellant filed its application for review pursuant to § 311.700, RSMo 1969. On December 23, 1974, the circuit court of the City of St. Louis affirmed the decision of the supervisor of liquor control in all respects.

This appeal followed. The appellant contends that the circuit court erred in affirming the order of the supervisor because the supervisor erred in applying the applicable law for the reason that: (1) the substance of the transaction, i. e., the question of whether Dennis was purchasing beer for himself or for his brother, Joseph, was ignored by the supervisor in spite of the fact that this was the appellant's defense and in spite of the fact that substantial evidence was introduced on this issue; (2) resolution of the "agency" question is crucial since the transaction did not constitute a "sale" within the meaning of § 311.310 if Dennis, a minor, purchased the beer for an adult and not for his own consumption. The contention is made that a minor who purchases intoxicating liquor for an adult does not violate the statute; (3) the purported "findings of fact" of the supervisor do not constitute findings of fact and cannot serve as a basis for the conclusion of law; and (4) the supervisor failed to make any finding "on the issue of whether Dennis Bomarito was purchasing beer for himself or for his brother . . . ."

Appellant argues that the substance of the transaction was that the beer was in reality a sale to Joseph rather than to the minor, Dennis, and that the supervisor made no findings "on the issue of agency." "Clearly, the Supervisor," appellant argues, "considered the question irrelevant to his consideration." Hence, appellant argues

that the question of agency is crucial because " '[w]here a minor is in fact purchasing for a specific adult person and not for his own consumption, and the seller knows this fact, or is told thereof at the time of the sale, it is held that the sale is not to a minor . . . .' "

Appellant argues that Missouri follows this general rule. It relies on *State v. Feldman,* 150 Mo.App. 120, 129 S.W. 998 (1910), and *State v. McLain,* 49 Mo.App. 398 (1892). Appellant also relies on decisions in other states. *State v. Williams,* 307 P.2d 163 (Okl.Cr.1957), and *State v. McMahon,* 53 Conn. 407, 5 A. 596 (1886).

In *State v. Feldman,* supra, defendant was charged with selling beer to a minor. This court, under the statute then in effect,[3] held that under the evidence, a sale of liquor was made to a father and not to his minor son and that there was no violation of the statute.[4] This court further held that the minor was not a co-purchaser, but that the sale was made to the father.

In *McLain,* supra, the defendant was charged with selling liquor to a minor. The evidence disclosed that the defendant furnished liquor to a minor upon the written order of an older brother on several occasions, but on two other occasions there was no written order from anyone. The Kansas City Court of Appeals held that, under the 1889 statute then in effect, § 4588, RSMo 1889, a sale made to a minor under an "order disclosing his principal was a sale to the principal . . . . But in the instances where the minor purchased the liquor without disclosing the name of his principal for whom he made the purchases, the law presumed that the purchases were made for his own use. The mere fact, that he was

---

3. The predecessor to § 311.310—§ 2179, RSMo 1899—stated: "Any person who shall directly or indirectly sell, give away or otherwise dispose of or furnish or deliver any intoxicating liquor in any quantity to any minor without the written permission of the parent, master or guardian of such minor first had and obtained, shall be guilty of a misdemeanor . . . ." See also § 4588, RSMo 1889.

4. In *Feldman,* supra, father and son in the employ of the Anti-Saloon League worked as detectives to hunt down violations of the law. While the evidence is confusing, the court held that the "fair inference from the evidence, is that the father bought the beer." *State v. Feldman,* supra, 129 S.W. at 999. There was also evidence of enticement.

making the purchase . . . for the use of another, would not destroy this presumption." *State v. McLain,* supra, 49 Mo.App. at 401.

In some jurisdictions it has been held that where a minor purchases liquor, not for his own consumption but for the use of another person as whose messenger he is acting, liability depends upon the disclosure of the fact of agency, and if the minor informs the dealer that the liquor is for the use of another person who has sent him to buy it and with whose money he pays it, such being the truth, or if the dealer knows from other sources that the real purchaser is an adult and the minor is only a messenger, then the sale is between the adult and the dealer. *Leathers v. State,* 63 Okl.Cr. 220, 74 P.2d 967, 114 A.L.R. 114 (1937); *State v. Williams,* supra, 307 P.2d 163.[5] See also annot., 114 A.L.R. 121 (1938).

A leading decision is *Leathers v. State,* supra. There the defendant was charged with a criminal offense of selling liquor to a minor. Bettie Lou Reed, a little girl of nine years, went to the store and told the defendant that "mamma wants some whiskey." The grandmother had given money to the little girl. The defendant delivered twenty-five cents worth of whiskey to the minor, who delivered it to her grandmother. On these facts defendant was charged. The Oklahoma Criminal Court of Appeals held that the defendant was not guilty of the offense. The court held that when it is clearly shown that the minor is a messenger for the buyer and this fact is revealed to the seller and the liquor was in fact for the buyer and the money was actually furnished by the buyer and there is no subterfuge, the seller is not guilty. The court relied on a number of authorities—judicial decisions as well as text-writers.

Similarly, in *State v. Williams,* supra, 307 P.2d 163, two minors employed by an Oklahoma newspaper were instructed by their superior to purchase whiskey at "certain bootlegging establishments" in the county. The two young men equipped with a concealed recorder proceeded to the "Offbeat Bar" and purchased a pint of scotch. They stated that they were buying the liquor for "their boss." The defendant was charged with a criminal offense. There was a conflict in the testimony, and the Oklahoma court held that whether the minors were purchasing for an adult should have been submitted to the jury. The court repeated the principles established in *Leathers v. State,* supra.

But in other states, the agency exception does not appear to be applicable. *State v. Feldman,* 2 Conn.Cir. 476, 202 A.2d 259 (1964); *People v. Garrett,* 68 Mich. 487, 36 N.W. 234 (1888)—a minor had a note from an adult to deliver one bottle of beer; *People v. Lerner,* 270 App.Div. 828, 60 N.Y.S.2d 117 (1946).

We do not believe that the authorities relied upon by the appellant are dispositive of the issues presented here. First, we are not dealing with a criminal prosecution; we deal with the regulatory power of the supervisor to regulate and enforce the liquor regulations. Whatever force and effect these authorities may have in Missouri when a criminal offense is charged are not dispositive of the issue presented. Secondly, the evidence in this case as established by the officers indicates that there was substantial evidence for the supervisor to reach the decision he did.

▮ Under the facts and circumstances of this case, we believe that there was substantial and competent evidence to con-

---

5. In *State v. Williams,* supra, 307 P.2d at 167, it is stated: "[W]e hold that it is only where it is clearly shown that the minor is a messenger for the buyer, and this fact is revealed to the seller, and the liquor was in fact for the buyer, and the money was actually furnished for the payment of the same by the buyer, and there is no subterfuge, is the seller not guilty."

In *State v. McMahon,* supra, 53 Conn. 407, 5 A. 596, the handing of an unopened bottle of liquor to a minor when the sale was made to the father is not within the intent and spirit of the liquor law prohibiting the sale and delivery of liquor to minors.

clude that the sale of the two six packs of beer was made to a minor, Dennis Bomarito, and that the circuit court and the supervisor did not err in so holding. There was substantial and competent evidence to conclude that Dennis had possession of the beer, that he handed the money to Marsha and that the sale was made to Dennis rather than Joseph. After a careful reading of the entire record, we are convinced that the order of the supervisor was supported by substantial evidence. Our duty on appeal is well-settled. On judicial review this court determines if the order is supported by substantial evidence and is not clearly contrary to the overwhelming weight of the evidence. *Webb v. Norbert Markway Construction Company,* 522 S.W.2d 611, 614 (Mo.App.1975); *Hanebrink v. Parker,* 506 S.W.2d 455, 457 (Mo.App.1974).

We cannot adopt the view urged by the appellant regarding agency in view of the statutory proscription established by our general assembly in § 311.310.

■ We think that, at least for regulatory purposes, the statutory language of § 311.310 is clear. The agency exception in the earlier statutes was deleted in § 311.310. The legislature is presumed to know judicial construction of a prior act, so that an amendment substituting a new phrase for one previously construed indicates that a different interpretation should be given to the new phrase. *Salitan v. Carter, Ealey and Dinwiddie,* 332 S.W.2d 11, 14 (Mo.App. 1960); 1A Sutherland, Statutory Construction, § 22.30, 178 (Sands 4th ed. 1972). Therefore, we hold that the language of § 311.310, RSMo 1969, demonstrates, at least insofar as regulation of the industry is concerned, a legislative intent to abrogate the agency defense in Missouri. For us to engraft an agency exception by judicial construction in this context would be to

defeat the legislative purpose of the current statute—§ 311.310.

■ Despite the changes in modern society and the prevalence of teenage drinking, our general assembly has throughout the years and again most recently [6] prohibited the sale of liquor to persons under the age of twenty-one. Such restriction has its beneficial aspects. The object and spirit of the statute is to protect rather than punish. It protects the public, gives parents their natural right and protects the minors. See *State v. McLain,* supra, 49 Mo.App. at 399–400, and *Farmers Mutual Automobile Ins. Co. v. Gast,* 17 Wis.2d 344, 117 N.W.2d 347, 350 (1962).

■ Dealers who engage in the business of selling liquor stand on a different plane than other commercial operations. While engaging in the business is certainly lawful, it is differentiated from other occupations. No person has the natural or inherent right to engage in it. The state may impose such conditions, burdens and regulations as it may deem wise and proper. *Kehr v. Garrett,* 512 S.W.2d 186, 189 (Mo.App.1974).

■ We therefore decline to adopt the position urged by appellant that, if a minor purchases liquor for an adult and not for his own consumption, there is no *sale* and no violation of § 311.310. Such a position would be fraught with difficulties and, with the ingenuity of intelligent young persons, would in effect nullify the statute and the public policy established by our elected representatives in the general assembly.

■ As to appellant's other points, we cannot say that the supervisor ignored the question of whether Dennis purchased the beer for himself or for his brother, Joseph. There was no requirement that such a finding be made. All that the supervisor was required to find was that a sale had been made to Dennis, a minor. This is all the

---

**6.** Act 70, Senate Bill 438, 77th General Assembly, made the age of majority eighteen years, but the legislature specifically stated that "[t]he provisions of this act shall not apply so as to affect, change or modify any laws of this state pertaining to alcoholic beverages." The Act, for other reasons, was declared unconstitutional in *State ex rel. McNary v. Stussie,* 518 S.W.2d 630 (Mo. banc 1974).

statute requires. Furthermore, we believe that under our statute as it presently exists the question of agency in this context is an irrelevant issue.

■ Appellant also contends that the issue before the commissioner and the transaction involved constituted a question of law, and that his order is based on an erroneous interpretation of the applicable rule of law. We realize that when a question under review is one of law, we are not bound by the limitation that the order be supported by competent and substantial evidence. *Stephen & Stephen Properties, Inc. v. State Tax Com'n*, 499 S.W.2d 798, 802 (Mo.1973). But we hold that the supervisor did not err in applying the law as the facts are deduced from this record.

The appellant further contends that the supervisor's "findings of fact" do not constitute proper findings and cannot serve as a basis for his conclusion of law that the transaction constituted a violation of § 311.-310. Section 536.090.[7]

■ Although the findings of fact of the supervisor are inartfully drawn, we believe that they were sufficient. Missouri courts have generally required that the findings reveal the basis of the decision of an agency. *Iron County v. State Tax Commission*, 480 S.W.2d 65, 70 (Mo.1972). Findings need not be made in any particular form or stated with the same degree of formality required by judicial proceedings. All that is essential is that the findings be based upon substantial and competent evidence and be made on material facts. *Stephen & Stephen Properties, Inc. v. State Tax Com'n*, supra, 499 S.W.2d at 804–805. The practical reasons for the requirement

of findings of fact as outlined in *Stephen*, supra, were, we believe, satisfied in this case. We also believe that it is clear that the supervisor intended by the recital of his "findings" to reveal the basis of his decision.

We therefore hold that the findings of the supervisor were sufficient to satisfy § 536.090.

On oral argument, experienced appellate counsel stressed that, under the unique facts of this transaction, the appellant should not be deemed to have made a sale to a minor but that the sale was in reality made to the adult brother, Joseph. But after carefully scrutinizing this record, we are convinced that the evidence supports the conclusion that there was a sale to a minor and that the order of the supervisor and the judgment of the circuit court are not erroneous.

We, as did the supervisor, note the excellent record of the appellant with the department of liquor control, and note the absence of any other violation. We recognize too the value of the appellant in the business community. Perhaps the transaction described may have resulted from "poor judgment" on the part of the employees of the appellant, as noted by appellant's counsel in oral judgment in this court, but the law of this state is clear. Until further exceptions are made by the general assembly or until the general assembly adopts a different policy, we are compelled to conclude that the order and judgment should be affirmed.

We have read the entire transcripts, the briefs and the authorities relied upon by the appellant and conclude that the appellant's points are without merit and that the judg-

---

7. § 536.090, RSMo 1969: "Every decision and order in a contested case shall be in writing, and, except in default cases or cases disposed of by stipulation, consent order or agreed settlement, the decision, including orders refusing licenses, shall include or be accompanied by findings of fact and conclusions of law. The findings of fact shall be stated separately from the conclusions of law and shall include a concise statement of the findings on which the agency bases its order. Immediately upon deciding any contested case the agency shall give written notice of its decision by delivering or mailing such notice to each party, or his attorney of record, and shall upon request furnish him with a copy of the decision, order, and findings of fact and conclusions of law."

ment of the circuit court should be affirmed. § 311.700.

The judgment is affirmed.

McMILLIAN and GUNN, JJ., concur.