Earl D. SAMPSON and Guelda Sampson, Husband and Wife, Appellants,

v.

W. F. ENTERPRISES, INC., a Corporation, and Don Wilkins, Wilma Stickle, and Allen Chevrolet, a Corporation, Respondents.

No. WD 31345.

Missouri Court of Appeals, Western District.

Dec. 30, 1980.

Motion for Rehearing and/or Transfer Denied Feb. 2, 1981.

Application to Transfer Denied March 9, 1981.

Edward F. Aylward, Kansas City, for appellants.

Robert G. Oberlander, Kansas City, for respondent W. F. Enterprises.

Thomas J. Conway, Stephen J. Moore, Kansas City, for respondent Wilma Stickle.

Roy A. Larson, Kansas City, for respondent Allen Chevrolet.

Before WASSERSTROM, C. J., Presiding, and CLARK and SOMERVILLE, JJ.

WASSERSTROM, Chief Judge.

Plaintiffs sue for the alleged wrongful death of their minor son Earl Anthony Sampson. The trial court dismissed plaintiffs' petition, and they appeal. We affirm in part and in part reverse and remand.

On September 21, 1978, Earl patronized the Paul and Jacks cocktail lounge operated by defendants W. F. Enterprises, Inc. and Don Wilkins and during the same afternoon another cocktail lounge, Kozy Inn, operated by defendant Wilma Stickle. Plaintiffs in Count I of their petition allege that "in violation of Missouri State Law and the ordinances of North Kansas City, Missouri, these three defendants negligently and carelessly served intoxicating liquors to their son who was under 21 years of age, to wit: 20 years of age, getting him intoxicated and under the influence of intoxicating liquors and unable to properly drive an automobile...."

Plaintiffs go on to allege that Earl then went to defendant Allen Chevrolet "to pick up his pickup truck and was in an intoxicated condition which defendant through its employees, agents and servants in the scope of their employment knew or should have known that their son was intoxicated or under the influence of intoxicating liquors and that this defendant negligently and carelessly permitted their son to pick up his truck and drive from Allen Chevrolet Company to the place of his death." The petition further states that after leaving Allen Chevrolet, Earl drove his pickup truck East on Highway 210 where it left the highway, went off the shoulder of the road, went into a gully and turned over, by reason of which Earl was killed. Plaintiffs further allege in Count II of their petition, which prays punitive damages, that "the actions of defendants showed complete indifference to and conscious disregard for the safety of Earl Anthony Sampson...."

Each defendant filed a motion to dismiss for failure of the petition to state a cause of action upon which relief could be granted. The sole question on this appeal is whether the trial court properly sustained those motions.

## I.

### As to the Tavern Owner Defendants

At common law, the action of a tavern owner in selling intoxicating liquor to a patron did not give rise to a civil cause of action either by the patron himself or by any third person who might suffer injury from acts done by the patron while in an intoxicated condition. The theory underlying that rule was that the injuries suffered were the proximate result of the patron's act in drinking, rather than the tavern keeper's act of selling. This harsh common law rule led to the enactment in many states of "dram shop acts" which did provide a civil remedy for damages. However, until quite recently the rather uniform rule continued to be that absent such a dram shop act, there was no civil cause of action for damages in this situation. 45 Am. Jur.2d Intoxicating Liquors Sec. 553, p. 852, et seq. (1969); 48 C.J.S. Intoxicating Liquors Sec. 430, p. 716 (1947).

The case of *Rappaport v. Nichols*, 31 N.J. 188, 156 A.2d 1 (1959) is generally credited as the seminal case which launched a trend away from that historic common law rule. New Jersey had had a dram shop act which was repealed in 1934, coincidentally with the repeal of national prohibition, and the former New Jersey local statutes were replaced by a new Alcoholic Beverage Control Act. The latter act prohibited sale of intoxicating liquors to minors and made violation punishable as a misdemeanor. The New Jersey court expressed disapproval of the old common law rule which exempted tavern owners from liability and held that the statutory prohibition of sale to minors carried not only a criminal penalty, but also gave rise to a common law tort.

Since the decision in *Rappaport*, there have been a very considerable number of cases adopting the same approach, but also a substantial number of cases continued to adhere to the old common law rule. The latter cases generally express sympathy with the *Rappaport* view but hold that a change in the ancient common law rule should be left to the legislature. 45 Am. Jur.2d Intoxicating Liquors Sec. 555, p. 854

(1969); 48 C.J.S. Intoxicating Liquors Sec. 430 (Supp. 158, 1980); Annot., *Common-Law Right of Action for Damage Sustained by Plaintiff in Consequence of Sale or Gift of Intoxicating Liquor or Habit-Forming Drug to Another*, 97 A.L.R.3d 528 (1980); Annot., *Liability of persons furnishing intoxicating liquor for injury or death of consumer, outside coverage of civil damage acts*, 54 A.L.R.2d 1152 (1957); see reference to the division of authority in *Moore v. Riley*, 487 S.W.2d 555 (Mo.1972).

The situation in Missouri is that this state had a dram shop act, Sec. 4487 RSMo 1929, which was repealed in 1934 by Laws 1933–34, Extra Session, p. 77. Concurrently with that repeal, Missouri adopted the new Liquor Control Law which provided and still provides in Sec. 311.310 that any licensee "who shall sell * * * any intoxicating liquor in any quantity whatsoever to any person under the age of twenty-one years, * * * shall be deemed guilty of a misdemeanor . . . ."

The central question for determination, so far as this case is concerned, is whether Sec. 311.310 is purely for the regulation and control of the liquor business, or whether on the other hand, it was intended for the protection of minors. The first Missouri decision to speak to this question was *May Dept. Stores v. Supervisor of Liquor Control*, 530 S.W.2d 460, 468 (Mo.App.1975). That decision stated that Sec. 311.310 "protects the public, gives parents their natural right and protects the minors."

The next judicial pronouncement concerning this Missouri statute came in *Alsup v. Garvin-Wienke, Inc.*, 579 F.2d 461 (8th Cir. 1978). In *Alsup*, defendant served intoxicating liquors to a minor who then drove on a highway and collided with plaintiff's automobile. In a suit by the plaintiff against the tavern keeper, the 8th Circuit declined to predict that the Missouri courts would follow the modern trend of authority and therefore ruled the case to be within the old common law rule under which the tavern owner had no liability. With respect to Sec. 311.310, the court held that the statute was for business regulation rather

than the protection of minors or people who might be injured by intoxicated minors. In this connection *Alsup* referred to the contrary observation in *May Dept. Stores* but characterized the language employed in that case as purely dictum. It is the *Alsup* opinion upon which the defendant owners principally rely in the present case and which apparently constituted the basis for the trial court's decision upholding their motions to dismiss the petition here.

The language used in *May Dept. Stores* was unquestionably not necessary to the decision in that case and therefore strictly speaking was dictum. However, to brush off the effect of the statement made in that opinion so brusquely is to ignore the citation of authority given by Judge Simeone in support and which serves to demonstrate that the language used was intended to be a considered expression regarding the purpose of the statute.

However, we are not left with simply a conflict between *Alsup* and *May Dept. Stores.* The court in *Alsup* did not consider and apparently was unaware of the decision of the Missouri Supreme Court in *Moore v. Riley,* 487 S.W.2d 555 (Mo.1972). In *Moore* an altercation arose in a drinking establishment which continued when the patrons went immediately outside. Sally Riley, a young woman under the age of 21, was the companion of one of the disputants, and she threw a drinking glass in plaintiff's face, breaking the glass and cutting his eyes. Plaintiff filed suit against the operator of the tavern on the ground that the latter had violated the city liquor ordinances prohibiting minors from being on the premises of a liquor establishment, and that such violation was negligence per se which directly contributed to produce the injuries sustained by plaintiff.

The court discussed at some length the traditional common law concepts tending to insulate tavern keepers from liability and also many of the recent cases which have undertaken a reconsideration of the common law theory of nonliability. The court also made reference to *Skinner v. Hughes,* 13 Mo. 440 (1850) which had permitted civil

recovery based on an illegal sale of liquor to a slave. The court then went on as follows:

"No recent Missouri case dealing with violation of liquor laws as a ground for tort liability has been cited by the parties. Missouri, of course, does recognize that a cause of action for civil damages may be based upon an act which is violative of a criminal statute or a penal municipal ordinance. In recognizing that such may be the basis of liability, the requirement has been laid down that the person injured must be one of the class for whose benefit an ordinance was adopted and the ordinance must have been enacted to protect persons or property, conserve public health or promote public safety. [citing cases]"

The court then went on to point out that plaintiff's petition did not charge that Miss Riley had consumed intoxicating liquors in the tavern and the court stated:

"In view of * * * the absence of effort at any time to amend the petition to state a claim based upon unlawful consumption of intoxicants by Miss Riley * * * the question of liability upon such basis was not presented in the trial court and it will not be considered here as a possible separate basis for liability."

The court then proceeded to discuss whether plaintiff had a cause of action based upon violation of the ordinance prohibiting Riley's presence in the tavern. The court concluded that plaintiff could not successfully rely upon that ordinance provision for the reason that said provision was not intended to protect patrons against possible injuries at the hands of minors present on the premises. In that connection the court described the true purpose and intention of the ordinance as follows:

"The trial court properly concluded that the object of such ordinances is the protection of minors against exposure to the liquor traffic and the support of the public policy of excluding minors for their own benefit, from the use of intoxicating liquors."

 The logic of *Moore* requires the conclusion that a civil cause of action can arise

in favor of a minor who suffers injury as a result of becoming intoxicated on liquor sold to him in a drinking establishment. *Moore* states bluntly that the prohibition against the presence of minors in drinking establishments is for "the protection of minors * * * for their own benefit." If minors are the class for whose benefit this prohibition has been adopted, then even more so the prohibition of the sale of intoxicants to minors is also for their benefit and gives rise to a cause of action for civil damages. This conclusion requires a reversal of that part of the trial court's judgment dismissing plaintiffs' petition against the defendant tavern owners.

■■■ These defendants in their brief attempt to raise an additional defense based on contributory negligence on the part of Earl. It is true that the plaintiff parents will be barred from recovery if their deceased son Earl was guilty of contributory negligence. *Davenport v. Wabash Railroad Company*, 435 S.W.2d 641 (Mo. banc 1968). Also, in considering whether Earl was contributorily negligent, the standard of care required of him after he became voluntarily intoxicated is the same as that which would be required of one who is sober, and if he failed to exercise that degree of care which would be required of a sober person under the same circumstances he was guilty of contributory negligence. *State ex rel. Miser v. Hay*, 328 S.W.2d 672, 676 (Mo.1959).

■■■ Nevertheless, the issue of contributory negligence is not ripe for determination in the present posture of this case. The case comes here on a motion to dismiss the petition, which tests the sufficiency of plaintiffs' statement of a cause of action. Contributory negligence is an affirmative defense, on which the defendants bear the burden. Only infrequently will a petition be subject to dismissal because of its showing on its own face the applicability of an affirmative defense. For that result to occur, "the defense must be irrefutably established by the plaintiff's pleading." *McLeod v. Marion Laboratories, Inc.*, 600 S.W.2d 656[2] (Mo.App.1980); *Jaime v. Neurological Hospital Ass'n. of Kansas City*, 488 S.W.2d 641, 644 (Mo.1973).

■■■ The defense of contributory negligence is not irrefutably established by the present petition. Although it alleges facts which show negligence by Earl, that negligence does not bar recovery against a defendant guilty of willful and wanton negligence. *Stewart v. Farley*, 269 S.W.2d 896 (Mo.1954); *Galvin v. Jennings*, 289 F.2d 15, 19 (3d Cir. 1961).

■■■ The petition here alleges in Count II that "the actions of defendants showed complete indifference to and conscious disregard for the safety of Earl Anthony Sampson." The petition also alleges that Earl was served intoxicating liquor in each of two defendant taverns, so that he was necessarily under the influence of alcohol to some extent when he finished at the first tavern and proceeded to the second tavern which then served him more liquor. The pleadings to this point leave unstated which tavern Earl entered first and which second; it leaves without allegation how inebriated Earl was when he was served liquor at the second establishment; and there are other possible factors now not given which could bear upon willfulness and wantonness. The pleadings in the present state leave the distinct possibility that at least one of the two defendant taverns was willfully and wantonly negligent, thereby making contributory negligence unavailable to that extent. In a substantially identical pleading situation, an Indiana court has declined to dismiss the plaintiff's petition. *Parrett v. Lebamoff*, 408 N.E.2d 1344 (Ind.App.1980). That ruling is persuasive and should be followed here.

What has been said above is not to be taken as any effort to define willfulness and wantonness. Nor is this opinion intended to indicate one way or the other whether contributory negligence should be permitted as a defense even if no defendant was guilty of willful and wanton negligence. With regard to the latter very difficult question, the decisions throughout the country stand in conflict. Many jurisdictions allow the defense: *Ramsey v. Anctil*,

106 N.H. 375, 211 A.2d 900 (N.H.1965); *Lee v. Peerless Insurance Company*, 248 La. 982, 183 So.2d 328 (1966); *Venzor v. Santa Barbara Elks Lodge, No. 613*, 56 Cal.App.3d 209, 128 Cal.Rptr. 353 (1976); *Sissle v. Stefenoni*, 88 Cal.App.3d 633, 152 Cal.Rptr. 56 (1979); *Folda v. City of Bozeman*, 582 P.2d 767 (Mont.1978); *Swartzenberger v. Billings Labor Temple*, 586 P.2d 712 (Mont. 1978); *Collier v. Stamatis*, 63 Ariz. 285, 162 P.2d 125 (Ariz.1945); *Noonan v. Galick*, 19 Conn.Sup. 308, 112 A.2d 892 (1955); *Thrasher v. Leggett*, 373 So.2d 494 (La.1979); *Parrett v. Lebamoff*, 408 N.E.2d 1344 (Ind.App. 1980).

On the other hand, some jurisdictions refuse to permit the defense: *Soronen v. Olde Milford Inn, Inc.*, 46 N.J. 582, 218 A.2d 630 (1966); *Santoro v. Di Marco*, 65 Misc.2d 817, 320 N.Y.S.2d 132 (1971); *Schelin v. Goldberg*, 188 Pa.Super. 341, 146 A.2d 648 (1958); *Aliulis v. Tunnel Hill Corp.*, 114 N.J.Super. 205, 275 A.2d 751 (1971); *Vance v. United States*, 355 F.Supp. 756 (D.C.Alaska 1973); *Galvin v. Jennings*, 289 F.2d 15 (3d Cir. 1961). *See also, Van Gaasbeck v. Webatuck Cent. Sch. D. No. 1*, 21 N.Y.2d 239, 287 N.Y.S.2d 77, 234 N.E.2d 243 (1967); *Barthel v. Illinois Cent. Gulf R.*, 74 Ill.2d 213, 23 Ill.Dec. 529, 384 N.E.2d 323 (1979); *Vincent v. Riggi & Sons, Inc.*, 30 N.Y.2d 406, 334 N.Y.S.2d 380, 285 N.E.2d 689 (1972); *McCallie v. New York Central Rd. Co.*, 23 Ohio App.2d 152, 261 N.E.2d 179 (1969); *Tamiami Gun Shop v. Klein*, 116 So.2d 421 (Fla.1959); *Boyer v. Johnson*, 360 So.2d 1164 (La.1978); *Arredondo v. Duckwall Stores, Inc.*, 227 Kan. 842, 610 P.2d 1107 (1980); *Zerby v. Warren*, 297 Minn. 134, 210 N.W.2d 58 (1973); *Scott v. Ind. School Dist. No. 709, Duluth*, 256 N.W.2d 485 (Minn.1977); and *Werner v. City of Albuquerque*, 89 N.M. 272, 550 P.2d 284 (1976). *See also*, Restatement (Second) of Torts Sec. 483 (1965); Annot., 10 A.L.R.2d 853 (1950); and Prosser, *Contributory Negligence as Defense to Violation of Statute*, 32 Minn.L.Rev. 105 (1948).

When the issue as to the availability of contributory negligence in this type of case has been brought properly into focus by pleading and briefing, a ruling may become appropriate. However, we decline to voice any opinion now (perhaps unnecessarily for decision of this case) on that broad, far reaching proposition on the present skimpy record.

## II.

### *As to Defendant Allen Chevrolet*

Plaintiffs' theory of recovery against this defendant is negligent entrustment to Earl of the pickup truck. Restatement (Second) of Torts Sec. 390 (1965); *Evans v. Allen Auto Rental, Etc.*, 555 S.W.2d 325 (Mo. banc 1977).

■ That theory of liability however is applicable only when the defendant has a right of control over the instrumentality entrusted. Thus, Comment a to Sec. 390 of the Restatement states that this rule "applies to sellers, lessors, donors or lenders, and to all kinds of bailors." Conspicuously absent from that list is one standing in the position of bailee.

■ The petition in this case states that the pickup truck which Earl took from defendant Allen on the afternoon of September 21, 1978, was his own truck. Although not specifically so stated, the reasonable inference is that Earl had delivered his truck to Allen for repair or servicing and Allen therefore was simply in a position of a bailee. As such, it had a duty to turn over the truck on demand to Earl. It had no discretion to refuse to do so, and had it refused delivery it would have been guilty of an illegal conversion.

The absence of liability on the part of a bailee in turning over an instrumentality to the owner even though the owner demands delivery when in an obviously intoxicated condition has been ruled in *Mills v. Continental Parking Corporation*, 86 Nev. 724, 475 P.2d 673 (1970); and that holding has been reiterated and approved in *Wiggins v. Hughes Tool Company*, 87 Nev. 190, 484 P.2d 566 (1971) and in *Hulse v. Driver*, 11 Wash.App. 509, 524 P.2d 255 (1974).

The judgment of the trial court sustaining the motion of defendant Allen Chevro-

let to dismiss the petition as against it is affirmed. The judgment insofar as it sustained the motions of the tavern defendants is reversed, and the cause is remanded for further proceedings as against the latter defendants.

All concur.