**Roger L. MOORE, Plaintiff-Appellant,**

v.

**Sally RILEY, Defendant,**
**and**
**Martco, Inc. d/b/a The End Zone,**
**Defendant-Respondent.**

**No. 56664.**

Supreme Court of Missouri,
Division No. 1.

Dec. 11, 1972.

S. W. Longan, III, Meise, Cope, Longan & Fullerton, Kansas City, for plaintiff-appellant.

Norman O. Sanders, C. Thomas Carr, Sheridan, Sanders, Carr & White, Kansas City, for defendant-respondent.

WELBORN, Commissioner.

Appeal from judgment adverse to plaintiff on defendant's motion to dismiss cause of action for $100,000 damages for personal injury for an assault and battery upon plaintiff.

At around midnight on October 7, 1968, Sally Riley, then 20 years and 5 months of age, entered the End Zone Lounge in Kansas City. The End Zone Lounge was the trade name in which Martco, Inc., operated a business for sale of liquor by the drink under a permit issued by the City of Kansas City. Miss Riley was with Floyd Dixon. At around 1:00 A.M., Dixon got into an argument with two other patrons of the End Zone. Ed Lothamer, the manager, asked Dixon and the two other men to leave. They went outside and continued their argument in a driveway area "connected to The End Zone." Plaintiff Roger Moore was also a patron of the End Zone at the time and knew Dixon. Shortly after Dixon left the lounge, Moore, who had not been involved in the argument, left. He saw Dixon in the driveway and made a remark to him, advising him not to get in a fight. Words were exchanged between Dixon and Moore and blows were also struck. Two friends of manager Lothamer, Mike Hudock and Fred Arbanas, grabbed Moore and Dixon and Lothamer came out and told them not to start a fight. When Dixon and Moore were released, they again started fighting. About this time, Sally Riley came out of the bar. Arbanas handed her a glass and again went to break up the fight. He and Hudock again did so and Moore ended up sitting on the curbing of the driveway. While he was sitting there, Sally Riley approached him and threw the glass in Moore's face, breaking the glass and cutting his eyes.

Moore filed a two-count petition for damages for the injuries he sustained. The first count, not here involved, sought damages from Miss Riley. Default judgment for the plaintiff was entered on that count. The second count sought damages from Martco, Inc., on the grounds that the injuries plaintiff sustained were directly contributed to be caused by the negligent actions and omissions of agents of Martco, Inc., in combination with the acts of Sally Riley. The specific acts or omissions charged against Martco, Inc., were violations of three ordinances of the City of Kansas City: § 4.26 making it unlawful for a person under the age of 21, with exceptions not here important, to enter the premises of a permittee holding a sales-by-drink permit; § 4.94 making it unlawful for the holder of a sales-by-drink permit to permit a person under the age of 21 to enter or linger about the licensed premises unless accompanied by either parent or legal guardian; and § 4.103 prohibiting a permittee from allowing improper disturbances or brawls on the licensed premises.

The matter was presented to the trial court on a motion to dismiss, at which counsel for plaintiff stated to the court the facts and evidence upon which he intended to rely in proof of his claim. At the conclusion of such presentation the trial court sustained defendant's motion to dismiss Court II of the petition with prejudice. This appeal followed.

The theory of plaintiff is that in permitting Sally Riley, a person under the age of 21, to remain on the premises of the lounge, the permittee violated the city ordinances set out in the petition and that such violation was negligence per se which directly contributed to produce the injuries plaintiff sustained when struck by the glass thrown by Miss Riley.

The question of violation of statutes and ordinances regulating the operation of the business of selling intoxicating liquors as a basis for civil liability of liquor vendors for acts of their patrons has received considerable attention in recent years. The traditional common law concepts which have tended to insulate the vendor from liability have been re-examined and frequently rejected by the courts, without leg-

islative intervention in the form of so-called "Dramshop Acts." The case of Rappaport v. Nichols, 1959, 31 N.J. 188, 156 A.2d 1, 75 A.L.R.2d 821, is generally regarded as the landmark decision representing a change in the common law theory of nonliability of the liquor supplier.

In 1971, the Supreme Court of California, in the case of Vesely v. Sager, 5 Cal. 3d 153, 95 Cal.Rptr. 623, 486 P.2d 151, concluded that "[t]he traditional common law rule [which] would deny recovery [against a vendor of alcoholic beverages for providing alcoholic drinks to a customer, who, as a result of intoxication injures a third person] on the ground that the furnishing of alcoholic beverages is not the proximate cause of the injuries suffered by the third person * * * is patently unsound * * * ." 95 Cal.Rptr. 625, 486 P.2d 153. The opinion examines at length decisions of other states in which a similar conclusion was reached. Among the cases cited is Elder v. Fisher, 1966, 247 Ind. 598, 217 N.E.2d 847, upon which appellant has placed major reliance here.

In Elder, plaintiff was injured as a result of an automobile collision with a vehicle driven by a minor to whom the defendant had sold intoxicants in violation of Indiana statutes. The court concluded that the statute involved was "intended to protect against the possible harm resulting from the use of intoxicating liquor by those to whom it was not to be sold." Finding that the statute was sufficiently broad in scope to cover the type of injury before it, the court concluded that "an allegation of violation of this statute is an allegation of negligence." 217 N.E.2d 851. The court further concluded that the proximate cause issue in such case was for the jury. "Certainly it is for the jury to determine whether or not the injurious consequences that resulted from negligence are such as ought reasonably to have been foreseen, or whether an intervening cause was such as to break the causal connection." 217 N.E.2d 852[10, 11].

In a case involving sale to an adult rather than a minor, the Supreme Court of Wisconsin by a 4 to 3 vote in Garcia v. Hargrove, 1970, 46 Wis.2d 724, 176 N.W. 2d 566, declined to abrogate the common law rule of nonliability of the vendor of intoxicants for the injuries caused by his customers while intoxicated. A majority of that court concluded that, on the basis of policy considerations, the common law rule should not be changed.

In Wiener v. Gamma Phi Chapter of Alpha Tau Omega Fraternity, 1971, 258 Or. 632, 485 P.2d 18, the court held that a statute prohibiting sale of intoxicating liquor to minors was designed "to protect minors from the vice of drinking alcoholic beverages; it was not the purpose of the statute to protect third persons from injury resulting from the conduct of inebriated minors or of imposing liability upon a person contributing to a minor's delinquency by furnishing him with alcohol." 485 P.2d 21[1]. The court held that a charge of negligence in an action by a passenger injured in a collision involving an auto driven by an intoxicated minor could not properly be based upon a violation of the statute. The court did, however, hold that a common law action for negligence was stated against the organization furnishing the liquor by an allegation that the driver was a minor and that the organization knew that he would be driving an auto from the party and that the organization unreasonably served him liquor.

In Stachniewicz v. Mar-Cam Corporation, 1971, 259 Or. 583, 488 P.2d 436, the court held that a customer injured in a tavern brawl stated a claim based on negligence as a matter of law when he charged the tavern operator with violation of a liquor control regulation requiring a licensee to maintain an orderly establishment. The court stated (488 P.2d 439):

"* * * We find it reasonable to assume that the commission, in promulgating the regulation, intended to prevent these abuses, and that they had in mind the safe-

ty of patrons of bars as well as the general peace and quietude of the community. In view of the quoted purpose of the Act and the history of injury to innocent patrons of saloons, we cannot assume otherwise.

"In addition, we see no reason why the standard is not an appropriate one for use in the awarding of civil damages. Because plaintiff was within the class of persons intended to be protected by the regulation and the harm caused to him was the kind the statute was intended to prevent, we hold that the trial court erred in not treating the alleged violations of the regulation as negligence as a matter of law."

An old Missouri case has frequently been noted in cases on this subject in other jurisdictions. In Skinner v. Hughes, 1850, 13 Mo. 440, a seller of liquor was sued by the owner of a slave who had bought liquor without the permission of his master or overseer. The slave drank the liquor, became intoxicated, fell down and became frozen and eventually died. The Supreme Court upheld a verdict in favor of the owner of the slave. The court said (13 Mo. 443):

"In this case we regard the death of the slave as the natural consequence of the act of the defendants in providing him with the means of intoxication. By natural consequences, it is not meant that they should be such as would upon calculation of chances be likely to occur, or such as extreme prudence might anticipate; but 'such as have actually ensued without the occurrence of any such extraordinary conjunction of circumstances, as that the usual course of nature has been departed from.'

"The sale of whisky to the negro was unlawful, but that does not constitute the source of responsibility. The defendants might have sold the negro a rope, with which he immediately went out and hanged himself. The distinction between such a sale and a sale of intoxicating liquors is obvious. The former, though a breach of law, was not likely to be attended with injurious consequences, without a concurrence of circumstances and cooperation of acts on the part of the slave, not to be expected in the usual course of events. The latter is like placing noxious food within the reach of domestic animals."

■ No recent Missouri case dealing with violation of liquor control laws as a ground for tort liability has been cited by the parties. Missouri, of course, does recognize that a cause of action for civil damages may be based upon an act which is violative of a criminal statute or a penal municipal ordinance. In recognizing that such may be the basis of liability, the requirement has been laid down that the person injured must be one of the class for whose benefit an ordinance was adopted and the ordinance must have been enacted to protect persons or property, conserve public health or promote public safety. State ex rel. Wells v. Mayfield, Mo.Sup., 365 Mo. 238, 281 S.W.2d 9, 13[3–7]; Endicott v. St. Regis Investment Co., Mo.Sup., 443 S.W.2d 122, 125–126[1, 2]; Grimes v. Standard Oil Co., Mo.App., 370 S.W.2d 627, 634–635[9], [10–13].

■ In this case, appellant acknowledges that he would have no evidence that Miss Riley was intoxicated when she threw the glass in plaintiff's face. His petition does not charge, as a ground for liability, that she consumed intoxicating liquors at the End Zone, contrary to statutes and ordinances. Appellant does state that he would have presented circumstantial evidence from which it might be inferred that Miss Riley consumed intoxicants at the End Zone. The evidence could have been that she had been known to drink intoxicants at private parties and that she was seen drinking "something" that night at the End Zone. In view of the stated reliance upon presentation of the matter in the trial court upon the three pleaded ordinances and the absence of effort at any time to amend the petition to state a claim based upon unlawful consumption of intoxicants by Miss Riley at the End Zone, the question of liability upon such basis was not

presented in the trial court and it will not be considered here as a possible separate basis for liability.

Therefore, plaintiff's cause of action must stand or fall on violation of the ordinances prohibiting Miss Riley's presence in the End Zone and the ordinance prohibiting brawls and disorderly conduct.

■ The trial court properly rejected plaintiff's contention that the prohibition of the presence of minors at liquor by the drink establishments was intended to protect patrons of such establishments against possible injuries at the hands of minors whose presence at such a place of business would tend to expose them to situations which a minor is "unaccustomed to handling either emotionally or through experience." The trial court properly concluded that the object of such ordinances is the protection of minors against exposure to the liquor traffic and the support of the public policy of excluding minors for their own benefit, from the use of intoxicating liquors. Plaintiff was not within the class of persons for whose benefit such ordinances were adopted and the trial court properly concluded that no cause of action could be based upon the violation by the defendant of such ordinance. (The defendant could, in any event, have violated only the ordinance directed at the licensee. Ordinance No. 4.26 directed at the minor involved would have been violated only by Miss Riley.) The cases relied upon by appellant dealing with illegal sales of intoxicants are not convincing that violation of the ordinance here involved provides, in the circumstances of this case, the basis for a claim for civil liability upon the tavern owner arising out of the acts of the minor on the premises in violation of such ordinance.

■ Appellant also invokes the ordinance prohibiting brawls and improper disturbances on the licensed premises. The statement of evidence to be relied upon discloses no connection between Miss Riley and the dispute between Dixon and the two other patrons inside the bar, other than that Miss Riley was in Dixon's company. There was no indication that Miss Riley was aware of that occurrence or that her escort had been ordered out of the bar. She remained in the bar and left with the other patrons at the bar's closing time.

The disturbance outside the bar was preceded by plaintiff's intrusion into the affair by offering advice to Dixon. Restraint of plaintiff was necessary to terminate the conflict between him and Dixon. Although just who the aggressor might have been on the physical encounter between plaintiff and Dixon is not shown, plaintiff did not leave the area and avoid further conflict. The conflict was resumed when the participants, including plaintiff, were freed from restraint.

In these circumstances, the trial court properly found that no submissible case could have been made by plaintiff against defendant on the negligence charge based upon the disorderly place ordinance. Plaintiff may not rely upon the failure of the licensee to maintain an orderly establishment when his own conduct is relied upon as evidence of such violation.

Judgment affirmed.

HIGGINS, C., concurs.

PER CURIAM:

The foregoing opinion by WELBORN, C., is adopted as the opinion of the court.

HOLMAN, P. J., FINCH, C. J., and SEILER, J., concur.

BARDGETT, J., not sitting.