Gail F. SPOTTS, John E. Spotts and Mildred Spotts, Appellants,

v.

CITY OF KANSAS CITY, Missouri, et al., Defendants.

No. WD 37840.

Missouri Court of Appeals, Western District.

Feb. 17, 1987.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 31, 1987.

Application to Transfer Denied May 19, 1987.

Don B. Roberson, Kansas City, for appellants.

Richard N. Ward, City Atty., Jeffrey L. Hess, Asst. City Atty., Kansas City, for defendant City of Kansas City, Mo.

William L. Webster, Atty. Gen., Theodore L. Bruce, Asst. Atty. Gen., Jefferson City, for defendants Trooper T. L. Gray and Missouri State Highway Patrol.

Russell D. Jacobson, Kansas City, for defendants Kansas City Bd. of Police Commissioners and Officer Steven A. Wildman.

Thomas J. Cox, Kansas City, for defendant Sun Restaurants.

Sylvester Powell, Jr., Heilbron & Powell, Kansas City, for defendant Farmers Ins. Co:

Before GAITAN, P.J., and DIXON and TURNAGE, JJ.

GAITAN, Presiding Judge.

This is a civil action for money damages brought by plaintiffs-appellants, Gail F., John E. and Mildred Spotts against defendants-respondents, City of Kansas City, Missouri, T.L. Gray, The Missouri State Highway Patrol, Steven A. Wildman, The Board of Police Commissioners of Kansas City, Missouri, Sun Restaurants, Inc., Farmers Insurance Company, Inc., Mark Cecil and two other defendants, James Pruetting and Ernest Block. The latter two defendants settled before trial. The remaining aforementioned defendants, with the exception of Mark Cecil, filed motions to dismiss, which were sustained. Plaintiffs therefore went to trial only against Mark Cecil and received judgment in the amount of $5,200,-000.00. Cecil did not appeal. Plaintiffs now appeal the trial court's dismissal of the aforementioned defendants. The judgment of the trial court is affirmed.

## STATEMENT OF FACTS

This action arises out of an automobile accident that occurred on December 22, 1978. Plaintiff Gail F. Spotts was a passenger in a car driven by James N. Pruetting which was rear-ended by a van driven by Mark Cecil. As a result of the accident, Gail Spotts was rendered a paraplegic.

On the evening of the accident, Mark Cecil was a patron at defendant Sun Restaurants, Ltd. Plaintiffs allege that Sun continued to serve Cecil alcoholic beverages after he became intoxicated. Cecil drove his van from the bar and was stopped by Missouri Highway Patrolman, T.L. Gray, approximately 15 minutes before the accident. Gray ordered Cecil into the trooper's car. Defendant Gray issued Cecil a citation for driving with expired license plates and then released him from custody, notwithstanding the fact that Cecil allegedly was in an obviously intoxicated condition. Thereafter, Cecil drove toward the scene of the accident.

Approximately 15 minutes before the accident, there was another accident on N.E. 48th Street involving Ernest Block and William Wurtz. The Block vehicle rear-ended the Wurtz vehicle, causing the Wurtz vehicle to flip over on its side blocking the roadway at the bottom of a hill on N.E. 48th Street. This accident occurred at 7:30 p.m.

Defendant Steven A. Wildman, a Kansas City, Missouri policeman, responded to the scene of the Wurtz accident and immediately placed flares and barricaded N.E. 48th Street east of the Wurtz accident on the top of the hill. However, defendant Wildman did not barricade N.E. 48th Street west of the Wurtz accident, or place any flares to warn eastbound traffic that the obstruction was blocking traffic and causing a back up of approaching vehicles.

Pruetting drove his car eastbound on N.E. 48th Street and, after cresting the hill, he stopped west of the Wurtz accident. While Pruetting was stopped in traffic, the Cecil vehicle came over the hill and rear-ended the Pruetting vehicle. As a result,

plaintiff Gail F. Spotts sustained disabling injuries, causing her to be a paraplegic. This accident occurred at approximately 7:43 p.m. (13 minutes after the first accident).

The plaintiffs' claims against the defendants [1] may be summarized as follows:

| | | |
|---|---|---|
| 1. | City of Kansas City, Missouri | Negligence in failing to remove or barricade the obstruction to traffic on N.E. 48th Street. |
| 2. | Trooper T.L. Gray | Negligence in releasing Cecil from custody while in an intoxicated state. |
| 3. | Missouri State Highway Patrol | Liability for Gray's negligence under theory of respondeat superior. |
| 4. | Police Officer Steven A. Wildman | Negligence in failing to barricade or warn of the obstruction to traffic on N.E. 48th Street. |
| 5. | The Board of Police Commissioners of Kansas City, Missouri | Liability for Wildman's negligence under theory of respondeat superior. |
| 6. | Sun Restaurants, Ltd. | Negligence in serving alcoholic beverages to an obviously intoxicated person. |
| 7. | Farmers Insurance Company, Inc. | Breach of contract in refusing to pay medical pay coverage under both policies of insurance. |

The defendants filed separate motions to dismiss or for summary judgment primarily based upon the following grounds:

1. Plaintiffs' Amended Petition was in five counts. Count I was by Gail Spotts against all defendants except Farmers' Insurance Co. for negligence. Count II was by Gail Spotts against Gray, Wildman, the City of Kansas City, the Missouri State Highway Patrol and the Board of Police Commissioners under 42 U.S.C. § 1983. Count III was by Gail Spotts against Farmers' Insurance Co. for wrongfully refusing to make medical benefits payments under an automobile insurance policy. Count IV was by Gail's parents, John and Mildred Spotts against all defendants except Farmers' Insurance Co. for medical expenses incurred in caring for Gail, for mental distress, and for loss of society, companionship, and services of Gail. Count V was Jon and Mildred Spotts against Gray, Wildman, the City of Kansas City, the Missouri State Highway Patrol, and the Board of Police Commissioners apparently under 42 U.S.C. § 1983. However, Plaintiffs have alleged error only in the trial court's dismissal of plaintiffs' negligence claims and Gail's claim against Farmers' Insurance.

2. At common law a state and its political subdivisions are immune from suit for negligence. See O'Dell v. School Dist. of Independence, 521 S.W.2d 403 (Mo. banc 1975).

| | | |
|---|---|---|
| 1. | City of Kansas City, Missouri | Sovereign immunity. |
| 2. | Trooper T.L. Gray | Public duty doctrine. |
| 3. | Missouri State Highway Patrol | Sovereign immunity. |
| 4. | Officer Steven A. Wildman | Official immunity. |
| 5. | Board of Police Commissioners | Sovereign immunity. |
| 6. | Sun Restaurants, Ltd. | *Carver v. Schafer*, 647 S.W.2d 570 (Mo.App.1983), is not retroactive. |

Our discussion of the issues will be by category as they apply to the defendants herein.

## SOVEREIGN IMMUNITY

In 1978, § 537.600 RSMo was enacted to provide public entities with such sovereign immunity as existed at common law prior to September 12, 1977,[2] "except to the extent waived, abrogated or modified by statutes," and with the following two exceptions: (1) injuries resulting from negligent operation of motor vehicles by public employees, and (2) injuries resulting from the dangerous condition of a public entity's property.[3]

With this in mind, we consider plaintiffs' claims against each defendant.

### 1. K.C. Missouri

 Under common law as it existed prior to September 12, 1977, a municipality

---

3. In *Bartley v. Special School District of St. Louis*, 649 S.W.2d 864, 868 (Mo. banc 1983) the court held that sovereign immunity was waived under the two exceptions of § 537.600 only when the public entity had purchased liability insurance. In 1985, § 537.600 was amended to provide that sovereign immunity is waived under the two exceptions listed regardless of whether the public entity is covered by insurance. In *State ex. rel. Missouri Hwy. & Transp. Comm'n v. Appelquist*, 698 S.W.2d 883, 898 (Mo. App.1985), however, the court determined that that 1985 amendment was not intended to be retroactive.

The automobile accident which gave rise to plaintiff's injuries in this case occurred on December 22, 1978, after the effective date of § 537.600 RSMo 1978. The judicial construction of the statute by the Missouri Supreme Court in *Bartley* became, in effect, part of the text of the statute. *Anderson v. State*, 709 S.W.2d 893, 896 (Mo.App.1986). Therefore, public entities are vested with sovereign immunity under § 537.600, as interpreted by *Bartley*, for actions accruing prior to the effective date of the 1985 amendment. *Anderson*, at 896.

was immune from suit only for the negligent performance of its governmental as distinguished from its proprietary functions. *See Burke v. City of St. Louis,* 349 S.W.2d 930, 931 (Mo.1961). Plaintiffs claim that the City had a duty to keep its streets in a reasonably safe condition, free of obstructions. A breach of this duty is not protected by sovereign immunity. *See German v. Kansas City,* 512 S.W.2d 135, 142 (Mo. banc 1974), *quoting, Myers v. City of Palmyra,* 355 S.W.2d 17, 18–19 (Mo.1962). On the other hand, the regulation of traffic is a governmental function, the negligent execution of which is protected by sovereign immunity. *See Gillen v. City of St. Louis,* 345 S.W.2d 69 (Mo.1961).

■ In this case, the obstruction in the street was the emergency vehicles and the aftermath of the first accident, which police were attempting to remove. The essence of plaintiffs' claim is that the City allegedly failed to redirect and regulate traffic to avoid the obstruction resulting from the first accident. It is not the obstruction itself, that plaintiffs allege caused the second accident involving Gail Spotts. We feel, therefore, that plaintiffs' claim is more analogous to the cases involving regulation of traffic than to the cases involving obstructions in the street. *See e.g., Watson v. Kansas City,* 499 S.W.2d 515 (Mo. banc 1973); *Gillen v. City of St. Louis,* 345 S.W.2d 69 (Mo.1961). Regulating traffic at the scene of an accident is a governmental act which the City performs for the common good of all. We therefore hold that the City is protected by sovereign immunity.

2. *Missouri State Highway Patrol (MSHP)*

■ Plaintiffs' claims against MSHP is based on respondeat superior for the alleged negligence of Trooper Gray in permitting Cecil to drive in an intoxicated condition. Plaintiffs argue that the sovereign immunity of MSHP has been statutorily waived by § 105.710(5) RSMo Cum.Supp. 1982 (repealed) which reads as follows:

> To the extent the provisions of this section allow a monetary recovery against the state of Missouri, the doctrine of sovereign immunity is waived, but to no greater extent.

Although this statute was repealed in 1983, plaintiffs contend that it should be applied retroactively against MSHP. Plaintiffs argue that Art. I § 13 of the Missouri Constitution prohibiting retroactive application of new statutes protects only citizens and does not protect the state. This issue was decided adverse to plaintiff's position in *State Ex. Rel. Missouri Highway v. Appelquist,* 698 S.W.2d 883, 898 (Mo.App. 1985). There it was held that § 105.710 was not to be applied retroactively. Consequently, MSHP is protected by sovereign immunity.

3. *Board of Police Commissioners*

Plaintiffs claim that the Board is liable under respondeat superior for the negligence of its officer, Steven Wildman, in not removing, barricading or warning of the obstruction to traffic on N.E. 48th Street. Plaintiffs claim that the Board waived its sovereign immunity pursuant to §§ 71.185 and 537.600(1) RSMo 1978 by purchasing liability insurance. The Board admits that it did have automobile liability insurance, but no liability insurance for tort claims. Plaintiffs argue that their claim arises out of the use, operation and maintenance of Wildman's automobile since he failed to use his vehicle to barricade traffic.

> Section 71.185.1 RSMo provides in part: Any municipality engaged in the exercise of governmental functions may carry liability insurance and pay the premiums therefore to insure such municipality and their [sic] employees against claims or causes of action for property damage or personal injuries, including death, caused while in the exercise of the governmental functions ...

■ Initially we note that any waiver of sovereign immunity should be construed strictly. *Kanagawa v. State By and Through Freeman,* 685 S.W.2d 831, 834 (Mo. banc 1985). Section 71.185.1 applies only to "municipalities." In *Beiser v. Parkway School Dist.,* 589 S.W.2d 277, 280 (Mo. banc 1979), the court held that a

school district is not a "municipality" within the meaning of § 71.185 RSMo stating:

> While a municipality may be a municipal corporation ... not all municipal corporations are municipalities. (citation omitted) Even assuming that a school district may be a municipal corporation for certain limited purposes, it does not follow that a school district is, therefore, a "municipality" for the purposes of the statute [§ 71.185] in question.

*Beiser,* at 280.

■ Although the Board may provide police protection for the municipality of Kansas City, it continues to be obligated, as a legal subdivision of the state. *See State ex rel. Spink v. Kemp,* 365 Mo. 368, 283 S.W.2d 502, 514 (1955) ("The statutes creating the board of police commissioners of Kansas City ... expressly retain jurisdiction of the Kansas City police system as an agency of the State.") We find that although the Board may provide services for the municipality, it is not a "municipality" within the meaning of § 71.185.

Further, even if the Board were a "municipality," we do not believe that the Board waived its immunity for tort claims such as plaintiffs' by purchasing automobile insurance. We cannot stretch so far as to agree with plaintiffs' contention that their claim arises out of the use, operation and maintenance of Wildman's police car.

■ Similarly, we do not agree with plaintiffs' contentions that sovereign immunity has been waived pursuant to § 537.-600(1). Neither the Board nor Wildman is charged with negligently operating a motor vehicle. The Board is charged upon a theory of respondeat superior with Wildman's alleged negligence in not barricading, removing or warning of the obstruction to traffic caused by a traffic accident. We hold that there is no waiver of sovereign immunity under §§ 71.185 or 537.600(1) RSMo by the Board's purchase of automobile insurance.

## PUBLIC DUTY

■ Under the public duty doctrine, public employees are not liable to individuals for injuries resulting from breach of a duty owed to the general public. *Berger v. City of University City,* 676 S.W.2d 39, 41 (Mo. App.1984). *See Sherrill v. Wilson,* 653 S.W.2d 661, 669 (Mo. banc 1983). With this brief introductory explanation of the public duty doctrine in mind, we consider its application to the defendants herein.

### 1. *T.L. Gray*

■ Plaintiffs allege that Gray, in performing his duties as a Missouri State Highway patrolman, stopped Cecil within 15 minutes before the auto accident involving Gail Spotts. Gray ordered Cecil into the patrol car and gave him a ticket for driving with expired license plates. Gray then released Cecil, allowing him to drive, in what plaintiffs contend was, an "obviously intoxicated condition." Plaintiffs claim that Gray was negligent in failing to detect that Cecil was intoxicated and allowing him to operate an automobile in such condition.

In failing to arrest Cecil or prevent him from driving while allegedly intoxicated, Gray was performing his duties as a highway patrolman. The duty to enforce the laws prohibiting drunk driving is a duty owed to the general public. *See Berger,* 676 S.W.2d at 41; *Parker v. Sherman,* 456 S.W.2d 577 (Mo.1970).

Plaintiffs attempt to avoid the public duty doctrine by arguing that Gray owed a duty to "a special, particular and identifiable class of persons", i.e.) persons traveling on N.E. 48th Street on the evening of December 22, 1978. Plaintiffs are asking this court to apply the "special duty" exception. However, Missouri has not recognized this exception. *Berger,* 676 S.W.2d at 41; *Lawhon v. City of Smithville,* 715 S.W.2d 300, 302 (Mo.App.1986).

In *Jamierson v. Dale,* 670 S.W.2d 195 (Mo.App.1984), plaintiff's son fell from a seesaw at Dale's Academy where he was enrolled in pre-school. A regulation of the Missouri Division of Family Services required licensed day care centers, such as Dale's, to surface the area under playground equipment with a resilient material. Dale's did not comply with this regulation.

The plaintiff sued the employee of the Division of Family Services whose duty it was to inspect day care centers for compliance with the licensing regulations. The defendant observed that the area under the see-saw was not of a resilient material, but she recommended issuance of a license to Dale's Academy anyway. The plaintiff argued for application of the "special duty" exception, but the court rejected it, stating:

> The statutes and regulations here involved, insofar as they place a duty of enforcement upon defendant Halcheck, prescribe a duty to the public at large. Plaintiffs argue that the statutes and regulations here involved were meant for the benefit of a limited class, namely, children attending day care centers, and that defendant Halcheck's duties ran to that limited class rather than to the public at large. They attempt by this argument to take this case out of the public duty rule.
>
> Defendant Halcheck's duty, however, was not to that discrete class of children attending day care centers. It may be that violation of the regulation by Dale's Academy would be evidence of negligence in a suit against it for injuries to a child attending the Academy. (citations omitted) But that is not to say that the duty of inspection and enforcement placed upon defendant Halcheck was a duty running toward the same limited class. Her duty was not to the children; it was to her employer, the State of Missouri. It was a public duty, a duty to the public at large.

*Jamierson,* at 196.

We agree with the reasoning of *Jamierson* and hold that any duty Gray may have had to prevent Cecil from driving while intoxicated was a duty owed to the general public. Therefore, Gray is not liable to plaintiffs for any alleged breach of this duty.

**2. *Steven Wildman***

∎ The same reasoning which supports application of the public duty doctrine to Gray is applicable to Wildman as well. Wildman's alleged duty to set up barri-

cades or to warn of an obstruction to traffic was a duty to the general public. Wildman is not liable to plaintiffs for failure to fulfill this alleged duty.

∎ Plaintiffs argue that because Wildman did not raise the public duty doctrine in the trial court, he has waived it. We disagree. In order for plaintiffs to recover under Missouri law for negligence, they must show a duty to them was breached. *Nelson v. Freeman,* 537 F.Supp. 602, 607 (8th Cir.1983) *aff'd, Nelson v. Missouri Div. of Family Serv.,* 706 F.2d 276 (8th Cir.1983). "A citizen has no cause of action for injuries sustained as the result of an alleged breach of public duty to the community as a whole." *Christine H. v. Derby Liquor Store,* 703 S.W.2d 87, 79 (Mo.App.1985). *See also Lawhon v. City of Smithville,* 715 S.W.2d 300, 302 (Mo. App.1986). Failure to state a cause of action is a jurisdictional issue which may be raised any time, even on appeal. *Eilers v. Kodner Dev. Corp.,* 513 S.W.2d 663, 665 (Mo.App.1974).

## OFFICIAL IMMUNITY

We need not engage in a discussion of official immunity here because the above-referenced defendants have the defenses of sovereign immunity or the public duty doctrines which act as a complete bar.

## LIABILITY OF BAR FOR SELLING ALCOHOL TO AN INTOXICATED PERSON

∎ Plaintiffs seek to recover from respondent Sun Restaurants Ltd. Inc. (hereinafter "Sun"), on the basis that *Carver v. Schafer,* 647 S.W.2d 570 (Mo.App.1983), should be given retrospective effect. We disagree.

In *Sumners v. Sumners,* 701 S.W.2d 720 (Mo. banc 1985), the Court stated that the following three factors should be considered in deciding that a judicial decision should be given prospective-only effect:

1. Does the decision establish a new principle of law;
2. Will the purpose and effect of the new rule be enhanced or retarded by retroactive application;

3. What hardship will result to parties who relied upon the old rule if the new rule is applied retroactively?

*Sumner* at 724.

With regard to the first element, it is clear that *Carver* did set forth a new principle of law. At the present time, and at the time of the injuries sustained by Gail Spotts in December of 1978, Missouri did not have a Dram Shop Act. Missouri is a common law state. *See* § 1.010 RSMo (1986). At common law, the rule is that a tavern owner is not liable for injuries inflicted upon a third person by an intoxicated patron of that tavern. *Alsup v. Garvin-Wienke, Inc.*, 579 F.2d 461, 463 (8th Cir. 1978); § 537.053 RSMo 1986.

Plaintiffs argue that *Carver's* holding was clearly foreshadowed by *Moore v. Riley*, 487 S.W.2d 555 (Mo.1972). *Moore* involved a suit by a patron of a tavern against the tavern operator for injuries sustained when a minor, Miss Riley, who had been in the tavern, approached the patron outside the tavern and threw a glass in his face. The *Moore* court noted that the plaintiff had no evidence that the Miss Riley was intoxicated. The court stated:

> In view of ... the absence of effort at any time to amend the petition to state a claim based upon unlawful consumption of intoxicants by Miss Riley at the End Zone, the *question of liability upon such basis was not presented in the trial court and it will not be considered here as a possible separate basis for liability.* (emphasis added)

*Moore*, at 558–59.

We find that the *Moore* court's express refusal to consider the issue cannot be construed as approval of a theory of civil liability of tavern owners to third parties injured by intoxicated persons served by the tavern owners. We find that *Carver* unexpectedly set forth a new principle of law in Missouri.

With regard to the second element, retrospective application of *Carver* would not further the purpose of that decision. *Carver* clearly attempted to establish a duty for tavern owners to exercise ordinary care for the safety of others. Specifically, that court stated that tavern owners have a duty to refrain from serving alcoholic beverages to obviously intoxicated patrons. The reason for imposing this duty was to deter tavern owners from acting in a manner which would contribute to automobile accidents. No deterrent effect can take place in this case by applying a new rule to an incident which occurred approximately five years before that rule was established.

With respect to the final element, retrospective application of *Carver* would produce substantially inequitable results. At the time the collision occurred, respondent Sun was protected by the law in that no Dram Shop Act existed. Further, the common law rule which was in effect was that a tavern owner was not liable for injuries to a third person caused by one of its patrons. Therefore, even assuming for the sake of argument that respondent Sun did serve alcoholic beverages to Cecil when he was in an intoxicated condition, it would be inequitable to punish respondent Sun for actions which were clearly protected by the law at the time. *See e.g., Keltner v. Keltner*, 589 S.W.2d 235, 240–41 (Mo. banc 1979).

Most importantly, the policy of the State of Missouri has clearly been expressed in § 537.053 RSMo 1986, wherein it is stated:

1. Since the repeal of the Missouri Dram Shop Act in 1934 (Laws of 1933–34, extra session, page 77), *it has been and continues to be the policy of this state to follow the common law of England,* as declared in section 1.010 RSMo *to prohibit dram shop liability and to follow the common law rule* that furnishing alcoholic beverages is not the proximate cause of injuries inflicted by intoxicated persons.

2. The legislature hereby declares that this section shall be interpreted so that the *holdings in cases such as Carver v. Schafer,* 647 S.W.2d 570 (Mo.App.1983); *Sampson v. W.F. Enterprises, Inc.,* 611 S.W.2d 333 (Mo.App.1980); and *Nesbitt v. Westport Square, Ltd.,* 624 S.W.2d 519 (Mo.App.1981) *be abrogated* in favor of prior judicial interpretation finding the

consumption of alcoholic beverages, rather than the furnishing of alcoholic beverages, to be the proximate cause of injuries inflicted upon another by an intoxicated person. (emphasis added)

Clearly, this court should not promote *Carver* by applying the decision retroactively when the legislature has abrogated the decision.

## STACKING OF MEDICAL CLAIMS

Plaintiff Gail Spotts seeks to recover under the medical benefits provision of two policies of insurance issued by defendant Farmers Insurance Company. Farmers paid plaintiff the limits of the uninsured motorist coverage on each policy. Farmers also paid plaintiff Gail F. Spotts the sum of $5,000.00 for medical benefits under policy number 14 2658 96 62, but has refused to pay any medical benefits under policy number 14 2891 30 26 because of Condition 8 of the policy. Condition 8 of those policies reads as follows:

CONDITION 8. OTHER INSURANCE IN THE COMPANY.

With respect to any occurrence, accident, death, or loss to which this and any other insurance policy or policies issued to the insured by the Company also apply, no payment shall be made hereunder which, when added to any amount paid or payable under such other insurance policy or policies, would result in a total payment to the insured or any other person in excess of the highest applicable limit of liability under any one such policy.

Authority for Farmer's position is supplied in the case of *Farm Bureau Town & Country Ins. Co. v. Hughes*, 629 S.W.2d 595 (Mo.App.1981). In that case, the insured's (Hughes) minor son was injured in a one-vehicle accident. Hughes had three policies of insurance with Farm Bureau, each containing medical pay coverage. The company paid medical pay limits of the higher policy ($5,000.00), but refused to pay the limits of the other two policies ($2,000.00 each), and filed a declaratory judgment action. Those policies contained a provision very similar to Condition 8 of

the Farmers' policy. That condition read as follows:

OTHER AUTOMOBILE INSURANCE IN THE COMPANY.

With respect to any occurrence, accident, death, or loss to which this and any other automobile insurance policy issued to the named insured or spouse by the company also applies, the total limit of the Company's liability under all such policies shall not exceed the highest applicable limit of liability or benefit amount under any one such policy.

Hughes argued that the condition was ambiguous in that it could be construed to limit liability to the combined limit of all coverages under any one policy. *Hughes,* at 596. The court held that the condition quoted above was not ambiguous, and that it barred stacking of medical payments coverage. *Hughes,* at 597.

Plaintiff likewise argues that Condition 8 of the policy is ambiguous, but for different reasons than those asserted by the plaintiff in *Hughes.* She argues that Condition 8 may be construed as only preventing the stacking of liability insurance coverage and uninsured motorist coverage since it only refers to the "liability limits" of the policy. Plaintiff asserts that medical payments are not considered to be a liability section of the policy and that recovery of such benefits is independent from any consideration of liability of the insured. Therefore, she contends that the words "limit of liability" in Condition 8 does not refer to medical payments. Plaintiff distinguishes the policy at issue in *Hughes* on the ground that the condition therein specifically referred to "limit of liability *or benefit amount.*" Plaintiff relies on *Cameron Mut. Ins. Co. v. Madden,* 533 S.W.2d 538 (Mo. banc 1976), for the proposition that language in the policy must specifically prohibit stacking of *medical benefits* and not just liability.

We disagree with plaintiff's argument. First, the holding in *Cameron Mut. Ins. Co. v. Madden,* 533 S.W.2d 538 (Mo. banc 1976), did not turn on a failure of the policy to specifically prohibit stacking of *medical benefits,* but on a failure to specifically

prohibit *stacking.* The court stated that "it is possible to clearly and explicitly spell out an intention to limit liability to single coverage * * * That, however, has not been done in this case." *Madden,* at 547. *See also Hempen v. State Mut. Auto. Ins. Co.,* 687 S.W.2d 894, 895 (Mo. banc 1985).

Consistent with the reasoning of *Madden,* the *Hughes* court held that the policy at issue there was "clear and explicit in its intention." We hold that the present policy is likewise "clear and explicit in its intention."

It is not crucial that Condition 8 merely refers to "limit of liability." The words "limit of liability" are not the same as "limit of liability coverage." The term "limit of liability" as used in Condition 8 simply means the maximum monetary amount for which the company is liable for any particular coverage provided in the policy. It is a term employed in Part I, Coverage A and B—liability coverage; in Part II, Coverage C, Uninsured Motorist Coverage; in Part III, Coverages D and E—Medical Expense Insurance, and again under Coverage H. Each of those sections of the policy has a heading "Limit of Liability". Moreover, under the heading "Conditions", the policy states that "[c]onditions 1 to 9 and 14 to 16 apply to all coverages." Condition 8 states unequivocally that stacking of these coverages with other policies of the company is forbidden. The words "highest applicable limit of liability under any one such policy" must be given a reasonable interpretation and when read in conjunction with the other provisions of the policy there is no ambiguity.

The rule is firmly established in Missouri that insurance policies, like other contracts, must be given reasonable interpretation, and in construing the terms of the policy, the courts discharge their duty when they ascertain the intention of the parties as disclosed by the contract they have entered. Plain and unambiguous language must be given its plain meaning and this rule applies to restrictive provisions in insurance contracts. *State Farm Mut. Auto. Ins. Co. v. Thomas,* 549 S.W.2d 616, 617–18 (Mo.App.1977). We find plaintiff's argument to be without merit.

Plaintiff argues that the court must consider the reasonable expectations of the parties by looking at the full circumstances of the transaction, rather than merely looking at the words of the insurance contract because the insurance policy is an adhesion contract. Plaintiff relies upon *Estrin Constr. Co., Inc. v. Aetna Casualty & Surety Co.,* 612 S.W.2d 413 (Mo.App.1981), and *Spychalski v. MFA Life Ins. Co.,* 620 S.W.2d 388 (Mo.App.1981) in support of her argument.

Under the reasonable expectations analysis, a contract contains terms not within the reasonable expectations of the parties if the other party has reason to believe that the adhering party would not have accepted the agreement if he had known that the agreement contained the particular term. *Estrin,* 612 S.W.2d at 426.

Plaintiff argues that had Mr. and Mrs. Spotts known and understood that they would not receive any medical benefits under the second policy, they would not have agreed to pay the premium on the second policy. Therefore, plaintiff argues that Condition 8 is not within the reasonable expectations of Mr. and Mrs. Spotts.

Each policy covered a separate automobile. The medical expense provision of the policy provides:

"To pay all reasonable expenses incurred within one year from the date of accident for necessary medical services.

(D) to or for the named insured or a relative who sustains bodily injury caused by accident,

(1) While occupying the described automobile or a non-owned automobile provided the actual use of such automobile is with the permission of the owner, or * * * *"

While plaintiff could collect medical payments while riding in a non-owned vehicle, she could not collect medical payments for an injury suffered while riding in an owned vehicle unless there was a policy on the owned vehicle so occupied. Surely plaintiff would want to collect medical payments if injured in either of the owned vehicles and

to do so, she had to have medical payments coverage on each car.

Condition 8 of the Farmer's policy is not ambiguous and is valid and enforceable.

The judgment of the trial court is affirmed.

All concur.